# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

IN RE: SPECIAL PROSECUTOR,      : No. 1 MM 2015
THIRTY-FIFTH STATEWIDE         :
INVESTIGATING GRAND JURY     :
                                       :
                                       :
                                       :

## ORDER

**PER CURIAM**

    **AND NOW**, this 26th day of August, 2015, upon the request of the supervising judge for removal of the seal from all matters involving the 35th Statewide Investigating Grand Jury and the investigation of Attorney General Kathleen Kane which have been lodged in this Court, save for grand jury materials such as testimony, exhibits, and <u>in camera</u> proceedings, and based on the supervising judge's assurance that there are no present grand jury secrecy concerns relative to such unsealing, it is hereby **ORDERED** that the seal is lifted upon such terms.

Filed in Supreme Court

JAN 6 2014

Middle

UNSEALED PER
ORDER OF THE
COURT DATED
AUGUST 26, 2015

IN THE SUPREME COURT OF PENNSYLVANIA

IN RE:                                      : SUPREME COURT No.
                                            :
                                            : GRAND JURY DOCKETS:
                                            :   SUPREME COURT OF PA
SPECIAL PROSECUTOR,                         :   No. 176 MD 2012
THIRTY-FIFTH STATEWIDE                      :   MONTGOMERY CO. COURT
INVESTIGATING GRAND JURY                    :   No. 2644 MD 2012

## EMERGENCY APPLICATION FOR EXTRAORDINARY RELIEF

AND NOW, this 6th day of January, 2015, comes David Peifer, by counsel, Christopher P. Caputo, Esq., and presents the following:

### JURISDICTION

1. The Supreme Court of Pennsylvania has jurisdiction pursuant to the Judiciary Article of the Constitution of the Commonwealth of Pennsylvania, Article 5, Section 2 (jurisdiction of the Supreme Court); Article 5 Section 10 (supervisory authority of the Supreme Court); and the first clause of Section 1 of the Schedule to the Judiciary Article (power and jurisdiction of the Supreme Court); and further

Received in Supreme Court

JAN 6 2015

Middle

pursuant to the Judicial Code, 42 Pa.C.S.A. §721(3) (original jurisdiction of the Supreme Court in *quo warranto*); and §726 (extraordinary jurisdiction of the Supreme Court); as implemented by Pa.R.A.P. 3307 (pleadings in original actions) and 3309 (King's Bench matters).

## APPLICANT

2. The Applicant is David Peifer Special Agent in Charge, Bureau of Special Investigations, an employee of the Pennsylvania Office of Attorney General (OAG). Special Agent Peifer among other duties, supervises all Special Investigations conducted by OAG; Special Agent Peifer has offices in Harrisburg, Norristown, and resides in Delaware County, PA.

3. On January 6, 2015 undersigned counsel accepted service of a subpoena on behalf of Special Agent Peifer by an agent of Special Prosecutor Thomas E. Carluccio to appear and testify on January 12, 2015 before the Thirty-Fifth Statewide Investigating Grand Jury sitting in Montgomery County.

4. The Applicant, by virtue of having been served with a subpoena to appear and testify, has standing to challenge the legality of the office of Special Prosecutor appointed to the Thirty-Fifth Statewide Investigating Grand Jury. Gwinn v. Kane, 19 Pa.Cmwlth. 243, 339 A.2d 838, 840-843 (1975), disposition affirmed, 465 Pa. 269,

2

348 A.2 900 (Pa. 1975).

## FACTUAL BACKROUND

5. On June 6, 2014 an article appeared in the *Philadelphia Daily News* concerning a 2009 grand jury investigation of J. Whyatt Mondesire, a former head of the NAACP in Philadelphia, and Harriet Garrett, one of Mr. Mondesire's employees. Exhibit A.

6. The 2009 statewide investigating grand jury had been convened and impaneled in Montgomery County.

7. The *Philadelphia Daily News* article cited two documentary sources: First, a 2009 memo written by then-Deputy Attorney General William Davis, Jr., addressed to then-Chief Deputy Attorney General Frank Fina and then-Senior Deputy Attorney General E. Marc Costanzo; and Second, a 2014 transcript of a taped interview by David Peifer, Director of the OAG Bureau of Special Investigations, of Michael Miletto, the OAG special agent who had earlier investigated Mr. Mondesire and Ms. Garrett. Exhibit A.

8. Sometime prior to the June 6, 2014 *Philadelphia Daily News* article, a Special Prosecutor (Thomas E. Carluccio, Esq., an attorney in private practice) was appointed and authorized to utilize the Thirty-Fifth Statewide Investigating Grand Jury to investigate the alleged "leak" of alleged "grand jury material" by employees

of the OAG, or other persons, to the *Philadelphia Daily News*.

9. The written communications, applications, petitions, orders, notice of submission, and all other documents underlying the appointment of the Special Prosecutor and submission of this investigation to the grand jury are under seal. It has been publicly reported that the appointment of the Special Prosecutor in this matter was authorized by the Supreme Court and by Order of Supervising Judge of the Grand Jury William R. Carpenter. Exhibits B, C, and D.

## BASIS FOR EXTRAORDINARY RELIEF

10. The Investigating Grand Jury Act, 42 Pa.C.S.A. §§4541 *et seq.*, does not provide for appointment of any special prosecutor.

11. The Commonwealth Attorneys Act, 71 P.S. §§732-101 *et seq.*, does not provide for the appointment of any special prosecutor.

12. The sole provisions in Pennsylvania law for appointment of a special prosecutor apply only in the event that an elected county District Attorney has been charged with crime or wilful and gross negligence in office. County Code, 16 P.S. §§1405-1406. See similar provisions at 16 P.S. §7710 concerning counties of the first class; and 16 P.S. §§4405-4406 concerning counties of the second class.

13. Pa.R.A.P. 3331 provides for review by the Supreme Court of "An order relating to the supersession of a district attorney by an Attorney General or by a court,

4

or to the appointment, supervision, administration or operation of a special prosecutor." This rule does not create any independent substantive authority for the appointment of any special prosecutor, and must therefore be construed to apply solely to cases arising under the above-cited provisions of the County Code.

14. The consideration of a special prosecutor in <u>Dauphin County Grand Jury Investigation Proceedings (No. 3)</u>, 322 Pa. 358, 2 A.2d 809 (1938), was held to have been authorized by a 1929 Legislative enactment which was repealed upon passage of the Commonwealth Attorneys Act, *supra*, in 1980. Former section 907 of the Administrative Code of 1929, 71 P.S. §297, authorized President Judges of the Courts of Common Pleas to request in writing that the Attorney General intervene in criminal matters and supersede the local District Attorney. See statutory history: <u>Commonwealth v. Harris</u>, 501 Pa. 178, 460 A.2d 747, 751, fn. 1 (1983). Thus, reliance upon the 1938 case by the Lackawanna County Court in <u>In re: County Investigating Grand Jury VIII, 2003</u>, 2005 WL 3985351 (Pa.Com.Pl. 2005) for the general proposition that Pennsylvania courts have traditional or inherent authority to appoint special prosecutors, was misplaced. See section II(C) of that Opinion, p.9-10, titled "Appointment of Special Prosecutor."

15. Another Lackawanna County grand jury later gave rise to a proceeding on the issue of whether the Pennsylvania Shield Law, 42 Pa.C.S.A. §5942, protects a

newspaper reporter from compelled disclosure of the source of a grand jury leak. In Castellani v. The Scranton Times, 956 A.2d 937 (Pa. 2008), the Supreme Court, while addressing the Shield Law, mentioned in passing that the Supervising Judge of the Grand Jury had appointed a Special Prosecutor to investigate a leak, but as the validity of the appointment was not at issue, no authority for the appointment was cited.

16. In In Re Dauphin County Fourth Investigating Grand Jury, 947 A.2d 712 (Pa. 2008), grand jury leaks had been complained of by individuals subject to investigation. The Supreme Court issued a *per curiam* Order under the King's Bench authority of 42 Pa.C.S.A. §726, directing the Supervising Judge of the Grand Jury "to consider whether a special prosecutor should be appointed to pursue the allegations..." No authority in support of the contemplated appointment of a special prosecutor was cited. *Id.*, 712. Subsequently, a special prosecutor was appointed, although, again, the later full Opinion by the Supreme Court does not cite any authority relied upon for the appointment. In Re Dauphin County Fourth Investigating Grand Jury, 19 A.3d 491 (Pa. 2011).

17. In disapproving the appointment of a special prosecutor by the Philadelphia Court of Common Pleas, to supersede the local District Attorney in the conduct of a grand jury investigation, outside the terms of 71 P.S. §297, the Supreme

6

Court of Pennsylvania expressly held that Pennsylvania courts had no such extra-statutory authority, and "there is no public office in Pennsylvania known as Special Prosecutor." Smith v. Gallagher, et al, 408 Pa. 551, 185 A.2d 135,149 (1962). The Supreme Court in Smith pointedly disapproved the proposition that Pennsylvania courts have inherent independent power to appoint special prosecutors, as follows:

> [T]he intervening appellants say that Judge Alessandroni did have the jurisdiction and the authority to order a special grand jury and appoint a special prosecutor. The oral and written arguments submitted in behalf of this thesis, however, lack conviction or even persuasion. They speak vaguely of inherent authority, common law jurisdiction and traditional powers.

Id., 146; and at length further at 151-154.

18. Although Smith v. Gallagher was decided by the Supreme Court in 1962, nothing in either the Investigating Grand Jury Act or the Commonwealth Attorneys Act, both adopted in 1980, has corrected the lack of authority to appoint special prosecutors vigorously pointed out by Justice Musmanno in 1962. Mere lapse of time has not provided new constitutional or statutory authority. Indeed, since repeal of 71 P.S. §297 by the Commonwealth Attorneys Act in 1980, 71 P.S. §732-502, no case has been found at any level of the Pennsylvania judiciary which has cited any constitutional or statutory authority for the appointment of a special prosecutor.

19. There was no necessity for the appointment of a special prosecutor in this

7

matter, since, according to publicly known facts, several county District Attorneys had jurisdiction to both investigate any "leak" by the OAG and prosecute any crime found to have been committed. Such county District Attorneys appear to include, at a minimum, those serving Montgomery County (site of the 2009 grand jury), Dauphin County (site of the principal office of Attorney General Kane and numerous other OAG officers and employees), and Philadelphia County (site of the *Philadelphia Daily News*). Reinforcing the availability of at least those three counties, the Investigating Grand Jury Act by its own terms expresses a preference for county grand juries over multi-county grand juries, unless "the investigation cannot be adequately performed by an investigating grand jury under section 4543 (relating to convening county investigating grand jury). 42 Pa.C.S.A. §4544.

20. The argument that the appointment of a special prosecutor was necessary since the Office of Attorney General would have had a conflict of interest in investigating itself does not answer either: (1) the complete absence of statutory authority for such an appointment; or (2) the availability of several alternative county District Attorneys to whom the investigation could have been referred.

21. The appointment of Special Prosecutor Thomas E. Carluccio, and the proceedings of the Thirty-Fifth Statewide Investigating Grand Jury related to any matter submitted or actions taken by the Special Prosecutor, were and continue to be

8

without legal authority, and null and void *ab initio*.

WHEREFORE, it is requested that the Supreme Court vacate the original Order appointing a Special Prosecutor in this matter under the applicable Notice of Submission or otherwise. It is further requested that the Supreme Court prohibit enforcement of all subpoenas issued by the Special Prosecutor under the authority of the Supervising Judge of the Grand Jury; and further prohibit issuance of any report or presentment by the Thirty-Fifth Statewide Investigating Grand Jury based on any matter submitted to the grand jury by the Special Prosecutor.

Respectfully submitted,

*Christopher P. Caputo*

Christopher P. Caputo, Esquire
Caputo & Mariotti, P.C.
730 Main Street
Moosic, PA 18507
Telephone: 570 342-9999
FAX: 570 457-1533
Email:cpcaputo@caputomariotti.com
PA Supreme Court ID 73446
*Attorney for David Peifer*

9

# Commonwealth of Pennsylvania

## STATEWIDE INVESTIGATING GRAND JURY

## ——— SUBPOENA ———

TO: David C. Peifer

:SUPREME COURT OF PENNSYLVANIA
:NO. 176 M.D. MISC. DKT. 2012
:MONTGOMERY COUNTY COMMON PLEAS
:M.D. 2644-2012

1. YOU are ORDERED to appear as a witness before the PENNSYLVANIA STATEWIDE INVESTIGATING GRAND JURY, 1000 Madison Avenue (corner of Trooper and Van Buren Roads), Third Floor, Norristown, Pennsylvania, on Monday, January 12, 2015 through Friday, January 16, 2015, at 8:00 O'clock A.M. to testify and give evidence regarding alleged violations of the laws of the Commonwealth of Pennsylvania and to remain until excused.

Please report on Monday, January 12, 2015 At 1:00 PM

2. YOU are further ORDERED:

FAILURE to attend may cause a warrant to be issued for your arrest and will make you liable under penalty of law for contempt of Court.

DATED: December 3, 2014

*William R. Carpenter*

_____

Hon. William R. Carpenter
*Supervising Judge*

If you have any questions about your appearance, contact Special Prosecutor Thomas Carluccio, at 484.674.2899.

Notice: 123                    Subpoena: 1624

IN THE COURT OF COMMON PLEAS
MONTGOMERY COUNTY, PENNSYLVANIA

IN RE: : SUPREME COURT OF PENNSYLVANIA
: NO. 176 M.D. MISC. DKT. 2012
THE THIRTY-FIFTH STATEWIDE :
: MONTGOMERY COUNTY COMMON PLEAS
INVESTIGATING GRAND JURY : M.D. 2644-2012

## **NOTICE OF RIGHT OF COUNSEL**

1. The Thirty-Fifth Statewide Investigating Grand Jury is conducting an investigation into possible violations of Pennsylvania Criminal Laws.

2. As a witness subpoenaed to appear, testify, and/or to produce documents, records or other evidence before the investigating grand jury, you are entitled to the assistance of counsel before, during and after your appearance before the investigating grand jury, including assistance during the time when appearing before the grand jury.

3. If you desire the assistance of counsel and cannot afford an attorney, counsel will be appointed by the Supervising Judge for you.

4. If you wish to consult with an attorney before your appearance before the investigating grand jury or if you wish to have an attorney with you during your appearance before the investigating grand jury, or both, and you are able to afford your own attorney, you should make arrangements with that attorney as soon as possible so as not to delay your scheduled appearance before the investigating grand jury. If you are unable to afford your own attorney, but wish the Supervising Judge to appoint an attorney with whom you may consult and who can accompany you during your appearance before the investigating grand jury, please contact the deputy attorney general listed on the bottom of your subpoena who will contact the Supervising Judge for the purpose of obtaining appointed counsel for you.

5. If you have any questions concerning the above or otherwise about your appearance, please contact the deputy attorney general listed on the bottom of your subpoena.

# COMMONWEALTH OF PENNSYLVANIA
## Statewide Investigating Grand Jury

## MEMORANDUM

SUBJECT:      Hotel/Transportation Arrangements

TO:      Grand Jury Witness

FROM:      Executive Secretary for the
          Grand Jury

You have been subpoenaed to appear in Norristown to testify before the Statewide Investigating Grand Jury. If you are in need of hotel accommodations the evening before testimony, or bus transportation arrangements, <u>you must contact the Deputy Attorney General listed at the bottom of your subpoena immediately.</u> Air travel within the Commonwealth is ordinarily not permitted, <u>***unless authorized by the Deputy Attorney General***</u>. If you are in need of train tickets you must purchase your own coach class tickets and attach both incoming/outgoing stubs to your expense sheet for reimbursement. **If you make any travel or hotel arrangements on your own, <u>please be advised that you will only be reimbursed for authorized expenses at the Commonwealth rate.</u>**

With regard to hotel lodging, the Commonwealth will pay for <u>only</u> your room rate (Commonwealth's rate). All incidentals such as movies or telephone calls are at your expense and are not reimbursable on your expense sheet. Parking charges and room service charges are not included in the room payment made by the Office of Attorney General. You will need to obtain receipts and attach to the expense sheet given to you upon arrival at Grand Jury for those charges to be reimbursed (minus any gratuities). Prior to arriving at the Grand Jury on the morning you are scheduled to testify **you must check out of your hotel room and pay for any extra charges.**

Once you arrive in the lobby of 1000 Madison Avenue, proceed to the grand jury reception area on the third floor or wait and a law enforcement officer from the Office of Attorney General will meet you in the lobby. **SUBPOENAED WITNESSES ONLY—NO GUESTS ARE PERMITTED ON THE PROPERTY—THEY WILL BE ASKED TO LEAVE! THIS INCLUDES THE PARKING LOT!** Please follow the law enforcement officer's instructions as to those allowed access to the grand jury floor. Upon entering the Grand Jury suite you will be instructed by the secretary at the desk to sign in and will be given an expense sheet. You will also be given a sticker to wear that identifies you as a visitor. Place the sticker on your clothing, either on your right or left shoulder. **In order for you to obtain full reimbursement, the following receipts will be needed: Parking, turnpike tolls, and/or taxi fare (gratuities will not be reimbursed). If you made your own travel or hotel arrangements in order to be reimbursed you must supply a receipt indicating a zero balance is due and shows method of payment. Again, you will only be reimbursed at the Commonwealth's rate.**

*<u>SPECIAL NOTE:</u> COMMONWEALTH OF PA EMPLOYEES APPEARING BEFORE THE GRAND JURY IN THE COURSE OF THEIR EMPLOYMENT ARE TO MAKE THEIR TRAVEL AND HOTEL ARRANGEMENTS AND SEEK REIMBURSEMENT THROUGH THEIR OWN STATE AGENCY, UNLESS OTHER ARRANGEMENTS ARE MADE WITH THE DEPUTY ATTORNEY GENERAL WHOSE NAME APPEARS AT THE BOTTOM OF YOUR SUBPOENA.*

**PLEASE NOTE: <u>NO SMOKING PERMITTED!</u>**

# EXHIBIT A

# philly●com

# State A.G. probed Philly NAACP leader Mondesire's finances 5 years ago



It's like a playground for grown-ups.

**Book your Winter Getaway now!**

The Naples Beach Hotel & Golf Club

**BY CHRIS BRENNAN, Daily News Staff Writer**
brennac@phillynews.com, 215-854-5973
POSTED: June 06, 2014

STATE ATTORNEY General Kathleen Kane is reviewing a 2009 grand-jury investigation of J. Whyatt Mondesire, former head of the NAACP in Philadelphia, and one of his employees, according to documents obtained by the *Daily News*.

Mondesire's employee, Harriet Garrett, and her daughter pleaded guilty in 2010 to stealing nearly $220,000 in state grant money for a job-training program. Garrett was sentenced to a minimum of six months in jail and ordered to pay restitution. Her daughter got 18 months' probation.

A 2009 memo written by then-Deputy Attorney General William Davis Jr. says investigators "uncovered what appeared to be questionable spending" of state money by Mondesire.

Kane, a Democrat, is now trying to determine what happened with the Mondesire investigation. Gov. Corbett, a Republican, was the attorney general at the time.

Mondesire, 64, says he was never questioned and denies any financial wrongdoing.

The 2009 Davis memo detailed for his bosses what had been uncovered about Mondesire and Garrett, who worked at the *Philadelphia Sunday Sun*, a weekly newspaper Mondesire publishes.

A nonprofit called Next Generation Community Development Corp., which is operated by Mondesire, held a state-government grant for a jobs-training program in 2004 and 2005, but handed it off to Garrett, who ran another nonprofit called Creative Urban Education Systems, or CUES, according to the Davis memo.

Mondesire was listed as chairman of the CUES board, the memo noted, while Garrett served as the treasurer for Next Generation's board.

Davis wrote his memo to then-Chief Deputy Attorney General Frank Fina and then-Senior Deputy Attorney General E. Marc Costanzo.

Corbett, as attorney general, named Fina in 2006 to head a new public-corruption unit and Costanzo to work on cases for the unit in the Philadelphia region.

Fina and Costanzo now work in a similar unit for District Attorney Seth Williams.

In the memo, Davis wrote:

* Next Generation's bank-account records, obtained with a grand-jury subpoena, showed deposits of $1.3 million in government grants in a one-year period.

Another $521,000 in the account came from political campaigns, rent payments and the intermingling of money from the *Sunday Sun*, which is owned and operated by Mondesire, the memo said.

* Next Generation paid $2,273 to the Philadelphia Club, a private and exclusive club in Center City.

* Next Generation spent "tens of thousands," writing checks to pay Mondesire's American Express bill for "clothes, food, lodging gas and entertainment" and a loan from Mellon Bank. There were also checks written to Mondesire and to "cash."





It's like a playground for grown-ups.

**BOOK YOUR WINTER GETAWAY NOW!**   The Naples Beach Hotel & Golf Club

## Do You Have These?



Fatigue   Constant Sugar Cravings   White-Coated Tongue

Bloating   Itchy/Burning Eyes

Lack of Motivation   Mouth Ulcers

Stalled Metabolism   Constipation or Diarrhea

Itchy Skin and Rashes

**Learn More>>**

### We Recommend

The Rev. Carl Fitchett to lead Philly NAACP
*April 18, 2014*

Questions over Philly NAACP finances
*January 24, 2014*

Board members from NAACP leader's nonprofit sue to see the books
*June 6, 2014*

Mondesire's friends-turned-foes get access to his books
*June 12, 2014*

* Next Generation wrote checks for $169,960 to Charles and Claudia Tasco and their company, C&C Construction. (Charles Tasco is the son of City Councilwoman Marian Tasco, a friend and political ally of Mondesire's for more than three decades.)

* $6,431 in CUES money was given to Mondesire for what Garrett called consulting. That type of expense was not allowed, according to the rules of the grant.

* In "various correspondence" between Garrett and Mondesire discovered by investigators, she questioned payments of more than $70,000 he made to Claudia Tasco.

* CUES paid $1,099 for health insurance for Mondesire.

* Davis wanted to question Mondesire - and possibly subpoena him for sworn grand-jury testimony - about Garrett, CUES and Next Generation.

Never questioned

Mondesire, a former *Inquirer* reporter who served as the top aide to the late U.S. Rep. Bill Gray, said no one from the A.G.'s Office ever questioned him.

"We didn't use any money for personal gain," Mondesire said.

He said that he has not seen the A.G. Office's documents and twice declined an offer from the *Daily News* to review them.

Mondesire said C&C Construction worked on four properties, including the NAACP headquarters and his newspaper office, where the Next Generation non-profit is also located.

"We bought supplies with my American Express card for construction," he said.

"They never asked me a single question back in 2009. We rehabbed the buildings. We spent money buying stuff for the buildings, construction and paying off developers."

Garrett declined to comment about the investigations. Her daughter did not respond to requests for comment.

The May 2010 news release about Garrett's arrest featured Corbett laying out the charges.

Corbett did not respond this week to two questions: Was he briefed on the Mondesire investigation and did he play a role in deciding what happened with that probe?

Mondesire was suspended by the NAACP's national headquarters in April after he feuded publicly with board members about the finances of the local chapter and Next Generation.

Those board members - Sid Booker, Donald "Ducky" Birts and the Rev. Elisha Morris - also were suspended.

Booker and Morris, who say they are still Next Generation board members, are now asking a Common Pleas judge to force Mondesire to show them the nonprofit's financial records.

As a judge considers that request, Kane's staff is reviewing what became of the 2009 Mondesire probe.

David Peifer, who heads the A.G.'s Bureau of Special Investigations, on March 21 interviewed Michael Miletto, the special agent who investigated Garrett and Mondesire.

The *Daily News* obtained a transcript of that taped interview.

Miletto told Peifer that he subpoenaed Next Generation's bank account, the transcript shows.

"When I did that, I found that there was a whole bunch of money that appeared to me to be donations to the NAACP, not [Mondesire], and they were going into Next Generation's account and they were being used for [Mondesire's] lifestyle - much of it," Miletto told Peifer.

Miletto said he was taken off the case after Fina and Costanzo were told about the probe, according to the transcript.

Miletto said "criminal activity was just ignored" after that. He added that two accountants who had worked for Mondesire had provided taped statements, with one asking for immunity and the other asking for protection.

Fina and Costanzo declined to comment about the Mondesire investigation, citing the secrecy of grand-jury proceedings.

Davis, now in private practice, also declined to comment, citing the same restriction.

Miletto, who still works for the A.G.'s office, also declined to comment.

Peifer referred questions to Kane's communications staff.

J.J. Abbott, a spokesman for Kane, declined to comment.

The Kane-Fina feud

Fina and Costanzo have a complicated and controversial relationship with Kane.

Kane criticized Corbett's tenure as attorney general when she ran for office in 2012, specifically targeting the Penn State child-abuse scandal that sent former assistant football coach Jerry Sandusky to prison.

Kane's staff is now conducting an extensive review of that investigation.

Fina led the Sandusky probe.

Kane, on Feb. 5, issued a statement noting that her office's Sandusky review had been underway for one year, adding that delays in the undertaking "will be described in more detail when the report is made public."

A month later, the *Inquirer* reported that Kane declined to pursue an investigation previously led by Fina and Costanzo, starting in 2010, that used Philadelphia lobbyist Tyron Ali as a confidential informant to tape conversations with four Philly state representatives and a former Traffic Court judge. On the tapes, the representatives and judge accept cash or gifts from Ali.

Kane has said Fina dropped 2,033 criminal counts against Ali, who had been charged with stealing $430,000 from a state program, 24 days before she was sworn into office.

She said that "extraordinarily lenient" deal "crippled the chance of this case succeeding in prosecution."

Fina, in a letter published by the *Inquirer* a week after the first story ran, called on Kane to explain her decision.

The *Inquirer* also published a letter that day from Fina's boss, Williams, critical of Kane.

Kane eventually turned over the Ali case file to Williams, who is now examining whether charges can be brought against the four representatives and the Traffic Court judge, who is currently on trial in an unrelated federal corruption case.

**On Twitter:** @ChrisBrennanDN

Blog: ph.ly/PhillyClout.com

**You May Like**

Sponsored Links by Taboola

**Please Don't Retire At 62. Here's Why.**
The Motley Fool

**Must-Have Products Being Sold for Next to Nothing**
QuiBids

**Social Security: How To Get $1,000 More a Month**
Newsmax

**Powerful Plastic: The 7 Best Credit Cards for People With Excellent Credit**
Next Advisor Daily

**An Extremely Brilliant Way To Pay Off Mortgage**
Bills.com

**Kate Middleton's Bizarre Behavior at Event Gets Everyone Talking**
Stirring Daily

**More From The Web**

- **Please Don't Retire At 62. Here's Why.** (The Motley Fool)
- **Must-Have Products Being Sold for Next to Nothing** (QuiBids)
- **Social Security: How To Get $1,000 More a Month** (Newsmax)
- **Powerful Plastic: The 7 Best Credit Cards for People With Excellent Credit** (Next Advisor Daily)
- **An Extremely Brilliant Way To Pay Off Mortgage** (Bills.com)

**More From Philly.com**

- **Man, 25, makes deal in murder** He was obsessed with his coworker, authorities said. By pleading...
- **Taking a look at anxiety in autism**
- **Nancy Schultz reflects on her husband's murder and forthcoming films**
- **Gargano gone!**
- **PhillyDeals: 'Funky-cool spaces' draw tech, marketing firms to Midtown Village**

Promoted Links by Taboola

comments powered by Disqus

**Commenting policy | Comments FAQ**

## 2014 Best Skin Tighteners

skincaresearch.com/FaceLifting
An Unbiased Review List of The Top Performing Skin Tighteners In 2014

## 5 Foods you must not eat

trimdownclub.com
Cut down a bit of stomach fat every day by never eating these 5 foods.

*FEATURED ARTICLES*

# EXHIBIT B

# philly●com

| Home | News | Sports | Entertainment | Business | Food | Lifestyle | Health | Marketplace |

Collections · Special Prosecutor

# Montco lawyer leading inquiry into whether Kane's office leaked grand jury information



Thomas E. Carluccio is a defense lawyer and Republican.

```
3   0   0   @
Like  Tweet  8+1
```

How to Get Rid of Dark Spots



Watch Shocking Presentation



GALLERY: Thomas E. Carluccio is a defense lawyer...

By Angela Couloumbis and Craig R. McCoy, Inquirer Staff Writers

POSTED: September 04, 2014

A veteran lawyer from Montgomery County is the special prosecutor heading the inquiry into whether state Attorney General Kathleen G. Kane's office leaked grand jury information in an effort to discredit her critics, The Inquirer has learned.

Thomas E. Carluccio, a criminal defense lawyer in Plymouth Meeting and former prosecutor in Delaware, was appointed over the summer by a Montgomery County judge to explore how secret records became public this year about a 2009 investigation by the Attorney General's Office involving Philadelphia political activist J. Whyatt Mondesire, according to several people familiar with the matter.

No charges were brought against Mondesire in the case. The investigation, details of which appeared in a June story in the Philadelphia Daily News, took place before Kane became attorney general.

Carluccio did not respond to messages left by phone and e-mail Tuesday. Renee Martin, Kane's acting director of communications, said the office would have no comment.

The Inquirer first reported news of the special prosecutor's appointment on Sunday. Sources said investigators in the inquiry have issued subpoenas to Kane's office and others.

Carluccio was appointed by Judge William Carpenter, the supervising grand jury judge in the eastern part of the state, the sources said. Both men are Republicans. Kane is a Democrat.

## We Recommend

Kane denies bid to release controversial e-mails
September 25, 2014

Kane to decide whether to release state workers' racy e-mails
September 21, 2014

Castille jabs Kane on gravity of inquiry
December 15, 2014

Special prosecutor probes Pa. Attorney General's Office
September 1, 2014

## Find More Stories About

Special Prosecutor

Kane



**RELAX. PLAY. STAY.**

**Book your Winter Getaway now!**

The Naples Beach Hotel & Golf Club

**YOUR REAL ESTATE PRO**

**Kevin Weachter**

Your Local Expert for Salunga-Landisville, PA

kw KELLERWILLIAMS

Salunga-Landisville, PA
717-278-6496

ADS BY ADWERX.COM

Though there have been past leak inquiries, this appears to be first time the state attorney general or top staffers in the office have come under scrutiny. Such an inquiry typically requires the approval of the chief justice of the Pennsylvania Supreme Court, according to a spokesman for the Administrative Office of Pennsylvania Courts.

A person who violates grand jury secrecy rules may be found guilty of contempt of court and sentenced to up to six months in prison.

Carluccio, 57, worked as a state deputy attorney general in Delaware before switching sides to work as a defense attorney in Pennsylvania. His wife, Carolyn Tornetta Carluccio, is a judge. A Republican, she joined Carpenter on the Montgomery County Common Pleas bench in 2010.

The leak to the Daily News involved a 2009 investigation by former Chief Deputy Attorney General Frank G. Fina and onetime Senior Deputy Attorney General E. Marc Costanzo. Fina, who handled the office's highest-profile criminal cases, left his position shortly after Kane took office.

**Heated battle**

Fina and Kane have been locked in a heated battle over the last two years on how certain cases were handled.

Kane, for instance, brought in a former federal prosecutor after she was elected to review Fina's prosecution of former Penn State football coach Jerry Sandusky on child sex-abuse charges.

During her campaign for office, Kane said the Sandusky probe might have been delayed for political reasons. The independent review found no evidence of that.

And for the last six months, Kane has faced criticism for shutting down a sting operation launched by Fina that sources and investigative documents say captured five Philadelphia Democrats, including four state legislators, on tape accepting money or gifts.

As criticism over the sting case mounted, the Philadelphia Daily News reported in early June that Kane was conducting a review of Fina's handling of a 2009 investigation into Mondesire's finances.

The newspaper's story discussed, among other things, a secret investigative memo summarizing the status of the Mondesire probe.

Mondesire, the former president of the Philadelphia NAACP, has denied any wrongdoing.

**Explicit e-mails**

The leak investigation has been complicated by a separate but intense legal fight over the exchange of sexually explicit e-mails among former and current state officials.

The e-mails have become an issue because some Kane critics argue that Kane's office is using the threat of their release as a way to silence criticism of her, sources have told The Inquirer.

The messages were discovered during Kane's review of the Sandusky investigation, which involved going through thousands of documents.

The Inquirer has reported that the e-mails were shared on state computers and sometimes through government e-mail accounts. They are said to have contained pornographic images, jokes, cartoons, and other private messages.

Though not all of the recipients are known, some of the material circulated among scores of officials, from homicide investigators in the Attorney General's Office to state prosecutors and other state officials, including top Pennsylvania jurists, The Inquirer has reported.

While Judge Carpenter in Montgomery County is overseeing the leak probe, a different judge, Norman A. Krumenacher 3d, of Cambria County, has jurisdiction over the e-mail issue.

Several news organizations, including The Inquirer, have put in right-to-know requests for the e-mails. But Krumenacher has ordered a stay on the release of the e-mails.

He oversees the grand jury in Western Pennsylvania as well as the legal issues involving Kane's review of the Sandusky prosecution. The e-mails in questions were unearthed by computer experts as part of that review.

acouloumbis@phillynews.com

717-787-5934 @AngelasInk

**You May Like**

Sponsored Links by Taboola

**Social Security: How To Get $1,000 More a Month**
Newsmax

**Please Don't Retire At 62. Here's Why.**
The Motley Fool

**Must-Have Products Being Sold for Next to Nothing**
QuiBids

# EXHIBIT C

 
# TRIBLIVE | Politics

[Search]

Western Pennsylvania's top news and sports source

Home   News   Investigative   Neighborhoods   Obit   Politics   U.S./World   Sports   Opinion/The Review   Business   A&E   Lifestyles   Obituaries

Headlines   Salena Zito   Election Results

## SHOCKING! Ellen Lied

Ellen has been exposed for tricking the world. She has lied for years!

🖨 Larger text  Smaller text | Order Photo Reprints

# Pennsylvania AG Kane grand jury may miss New Year's Eve deadline



AP

Attorney General Kathleen Kane speaks during a news conference Friday, June 27, 2014, at the Capitol in Harrisburg, Pa.



By Brad Bumsted
Monday, Dec. 29, 2014, 11:21 p.m.

HARRISBURG — There's nothing magical about the New Year's Eve deadline for a grand jury to finish its work examining whether Attorney General Kathleen Kane violated grand jury secrecy by leaking documents to a Philadelphia newspaper, and the outcome could take weeks or months to be revealed, legal experts said.

Several people close to parties involved in the investigation suggest the grand jury could continue to meet through mid-January.

"We don't discuss the grand jury activities. It is not public," Kane's spokeswoman, Renee Martin, said.

Kane's lawyers have said she did nothing wrong and committed no crime.

Even if resolution of the matter is imminent, experts said, the result may not be.

"There's no way to anticipate the timeline," said longtime criminal defense attorney William C. Costopoulous of Lemoyne in Cumberland County.

Judges sometimes seal grand jury presentments. And the grand jury's recommendations could be referred to a district attorney, who may decide that further investigation is necessary.

The results could range from clearing Kane, or making no report; directing Kane to explain at a hearing why she should not be held in contempt of court; or recommending criminal charges such as perjury or obstruction of justice.

If the grand jury finds no wrongdoing or need for a critical report, it could issue a report specifically clearing the parties involved, Costopoulous said.

"The range of possibilities is fairly broad," said Bruce Antkowiak, a former federal prosecutor and law professor at St. Vincent College in Unity.





It's Hockey Time!

SHOP PITTSBURGH OFFICIAL GEAR



You Need It. We Got It.
Place Your Classified Ad Here

TRIB TOTAL MEDIA Get it right. Now.

VIDEO                    More Videos

Click Covers for Deals

Kane testified last month before the grand jury in Montgomery County and acknowledged that she knew her office provided the Philadelphia Daily News information from a 2009 case about a man never charged with a crime, possibly to embarrass a former prosecutor with whom Kane is feuding.

Kane of Clarks Summit near Scranton is the first woman and first Democrat elected as attorney general. She said she believed the material leaked was not covered by grand jury secrecy.

The investigation of a statewide law enforcement official by a court-appointed special prosecutor is unusual, if not unprecedented, experts said. Pennsylvania Supreme Court Chief Justice Ronald D. Castille, who must retire Wednesday because he is 70, appointed as prosecutor Thomas Carluccio, a Norristown attorney selected by Montgomery County Judge William Carpenter.

Castille said there's precedent for court-appointed special prosecutors to handle grand jury leaks.

But since the state's first elected attorney general took office in 1980, none has undergone such an inquiry, said G. Terry Madonna, a political science professor at Franklin & Marshall College in Lancaster. Former Attorney General Ernie Preate, a Scranton Republican, resigned in 1995 upon pleading guilty to a federal mail fraud charge.

With grand jury secrecy, some "assumptions must be made" to analyze the investigation, said former Montgomery County District Attorney Bruce Castor, a Republican county commissioner.

"The first assumption I make is that the special prosecutor has no enforcement authority over the laws of the commonwealth," Castor said.

"Anything the special prosecutor uncovers could be inadmissible if it was gathered by a person without the authority to do so."

That may result in a referral of any findings to a district attorney, who may want to "reinvestigate" by talking with witnesses and reviewing documents, Castor said.

Castor and experts believe the court has authority to decide contempt of court, which they consider an "offense against the court." The penalty for contempt in a grand jury leak is up to six months in prison.

There's inherent authority for the court to investigate a leak when "there is a conflict of interest," Antkowiak said. Kane "could certainly not investigate herself."

"If there's no solution, a potentially serious criminal act goes unaddressed," Antkowiak said.

Kane has said she intends to seek re-election in 2016. But a critical grand jury report could be "very nasty" and affect her career, Castor said. Nothing prevents the transfer of the grand jury's work to another grand jury, if needed, though that could cause legal obstacles and delays, he said.

Brad Bumsted is Trib Total Media's state Capitol reporter. Reach him at 717-787-1405 or bbumsted@tribweb.com.

 Subscribe today! Click here for our subscription offers.

| Follow @BBumsted_Trib | | Follow @TribLive |

**Around the Web**



Is This Replacing Makeup? Millions Flock to...



Here's the ugly truth about blood pressure medication your doctor will never tell you.



Cornell Scientist Discovers a New Vitamin That Could Make People Live Forever?



These Girls Were What Adolescent Boys Dreamed About in the 80s...What They Look Like Now



The #1 trick to REVERSE Tinnitus - bizarre protein uncovered proven to STOP the ringing in your ears



Landisville residents rattled by who they just discovered on controversial new site

**Daily Photo Galleries**



Monday - Jan. 5, 2015

**Politics Photo Galleries**

GOP quick strikes are expected on health care, pipeline in Congress

**Babies Я Us**

Expires Jan. 22

**25% OFF**

5 DAYS LEFT

**Staples**

Ads by Adblade

# NEWSMAX

- John Bolton Mulls Leaving Fox for 2016 Bid
- John Yoo: NKorea 'Most Murderous Regime,' Obama Not Doing Enough
- Rep. Steve King Slams Boehner Leadership
- New Probiotic Fat Burner Takes GNC by Storm
- Limbaugh Won't Join Push to Oust Boehner
- How Older Men Are Increasing Testosterone
- Two Reasons Why It Is Time to Say Goodbye to Your Auto Insurer
- Banks Don't Want You to Know About This Loan

What's This?

Follow   Be the first of your friends to follow TribLIVE.com - Pittsburgh's News Source.

# EXHIBIT D

Sign In | Register | ☰

21° | **Philadelphia, PA**
Bolaris' Forecast

# philly●com

🏠 | News | Sports | Entertainment | Business | Opinion | Food | Lifestyle | Health | More

BREAKING NEWS VIDEO VOICES:BLOGS PHILADELPHIA NEWS NEW JERSEY POLITICS EDUCATION OBITUARIES NATION/WORLD WEATHER TRAFFIC LOTTERY

MORE ▷

# Stakes are high for Kane at grand jury meeting

274 COMMENTS


Kathleen Kane explains a point to a reporter about the sting evidence at a March news conference in Harrisburg. She said the investigation was flawed. MICHAEL BRYANT / Staff


GALLERY: Stakes are high for Kane at grand jury meeting

**Angela Couloumbis and Craig R. McCoy, Inquirer Staff Writers**
POSTED: Sunday, January 4, 2015, 1:08 AM

**The Inquirer**

Over the last year, Pennsylvania Attorney General Kathleen G. Kane has stumbled from one professionally damaging matter to another.

Now she faces another obstacle - and potentially the biggest yet.

Early this year, a statewide grand jury meeting in Norristown is expected to decide whether the onetime rising political star violated prosecutorial rules by leaking secret information to embarrass her enemies.

For Kane, the stakes are high: The grand jury could go so far as to recommend criminal charges, putting her in the awkward position of defending herself against allegations that she broke the law while serving as the state's top enforcer of law.

Advertisement


Obama's FDA approves 7 deadly drugs for sale to Seniors. Are you at risk?


The secret therapy President Reagan used to beat cancer - [No chemo or drugs]


40 Hottest Female Celebrity Bodies of All Time


Other countries have banned them, but they may still be in your refrigerator right now.


Biggest Cheerleader Wardrobe Fails!


Kris Jenner Goes On Date Night With New Boyfriend Corey Gamble in Los Angeles

*Latest News Video*

**More videos:**



*Most Viewed News Stories:*
Bolaris: Snow for Tuesday morning



**Walmart**

$3.98
each pack
Yoplait® Original Yogurt 8
Pack



Valid Until Jan 6th

*Travel Deals*

$1338 & up – London: 4-
Star Escape w/Tour,
Breakfasts & Air

See all travel deals ▸

LISTED BY **TRAVELZOO**

Shop Team Gear

Philadelphia Eagles
100mm Glass Ball
Ornament with
Marabou



$10.99 (26% off)
**Buy Now**

< prev next >

Even supporters acknowledge that the next few weeks could mark a make-or-break moment in her career. The risks range from a written rebuke, to being found in contempt of court, to a criminal charge of obstructing justice.

"The next few weeks will be a turning point for her," said John Morganelli, the Democratic district attorney in Northampton County in the Lehigh Valley. "If it ends in a contempt citation by a judge, it may not be devastating. But if there are crimes-code violations, that could be problematic."

Kane, a Democrat, has acknowledged that her office released information about a grand jury case run by her Republican predecessors. But she has contended that the information was not confidential grand jury material.

She has also strongly suggested that the leak investigation is aimed at destroying her politically.

"I am fighting for an end to abuse of the criminal justice system," Kane said in November, as she was heading in to the grand jury to testify. "If this can be done to me as attorney general, the chief law enforcement officer of the fifth-largest state in the country, I am sickened to think what can and may be done to regular, good people."

The leak inquiry was authorized in the summer by former state Supreme Court Chief Justice Ronald D. Castille, a Republican. The grand jury meets in secret, and, in an unusual move, witnesses before the panel have been ordered not to discuss their testimony publicly, according to two people familiar with the matter.

The Inquirer has learned that a number of former high-ranking officials in Kane's administration have testified, including her former first deputy, Philadelphia lawyer Adrian King, and her onetime chief operating officer, David Tyler. Howard Bruce Klein, the attorney for Linda Dale Hoffa, another former top Kane aide, declined comment.

In the main, people familiar with the matter say, the grand jury is examining how internal documents from a 2009 grand jury investigation led by the Attorney General's Office ended up being cited in a Philadelphia Daily News story this past June.

### Expanded Inquiry

The investigation involved alleged financial improprieties by J. Whyatt Mondesire, the former president of the Philadelphia NAACP. It was overseen by then-state prosecutor Frank G. Fina, with whom Kane has been locked for months in a bitter and tangled dispute over how certain cases were handled.

The grand jury has expanded its inquiry to examine Kane's decision in the fall to release the names of eight men who traded pornographic e-mails on state time, The Inquirer has learned. All eight had ties to Fina.

Kane's political star began to dim last year after The Inquirer reported that she had shut down a sting investigation launched by Fina, even though the undercover operation had caught public officials on tape accepting cash. To some, the




5 charged in killing
near playground


Ethicists question
Christie's free tickets


Frein ordered to
stand trial


4 new millionaires
thanks to Pa. lottery

 
START
STRONG
HOVER FOR    HOVER FOR
CIRCULAR    CIRCULAR

_ Walmart  _ _ _


FOOD LION    DOLLAR GENERAL
NEW YEAR
HOVER FOR    HOVER FOR
CIRCULAR    CIRCULAR

FOOD LION _ _   DOLLAR GENERAL _



**ITT Technical Inst**

**It's your choice:**
- ① Information Technology
- ⓔ Electronics Technology
- ⑧ Business
- ⓙ Criminal Justice
- ⓗ Health Sciences
- ⓓ Drafting and Design

**LEARN MORE**

*Also on Philly.com*

BUSINESS:


Organic market
planned for made-
over East Market

HEALTH:
10 healthy food trends to expect in
2015





story in the Daily News seemed designed to strike a counterblow at Fina.

In a mirror image of the criticism Kane has sustained over the sting, the newspaper article suggested that Fina had failed to aggressively pursue the Mondesire matter.

Fina was among scores of current or former staffers in the Attorney General's Office who exchanged sexually explicit e-mails, and Kane has been intent on naming him in connection with that, as she did with the eight officials, The Inquirer has reported.

But sources say the judge supervising the leak inquiry issued an order several months ago effectively barring Kane from citing Fina's name publicly. The judge did so after Fina and others argued that Kane was using the threat of releasing the e-mails to intimidate them.

### A year of controversy

After a landslide victory in 2012 that made her the first woman and first Democrat elected attorney general in the state, Kane swiftly built a national reputation in her first year in office for her stands in favor of gay rights and gun control.

Her second year, though, was marked by controversy over the sting, her retractions of public statements, and repeated shake-ups of her staff. Amid that, she could not point to any high-profile convictions to change the subject: The Pennsylvania Turnpike pay-to-play corruption case she announced with fanfare early in office fizzled late last year without any defendant receiving a jail sentence.

While admitting the disclosure of information to the Daily News, Kane - who declined comment for this article - has said the material was passed on "in a way that did not violate statutory or case law regarding grand jury secrecy."

Her contention: that Pennsylvania law has no statute that binds an attorney general to grand jury secrecy. Indeed, the state law establishing investigative grand juries makes no mention of the attorney general. Rather, it imposes secrecy rules on the participants in the jury room, and it names them - "juror, attorney, interpreter, stenographer," adding: "All such persons shall be sworn to secrecy, and shall be in contempt of court if they reveal any information which they are sworn to keep secret."

One of Kane's lawyers, Lanny J. Davis, has noted that when the Mondesire grand jury was in session in 2009 - and participants swore secrecy oaths - Kane was a stay-at-home mom.

"It is our legal opinion that there has never been a case decided where a succeeding attorney general has been accused of violating an oath that she never took," Davis said in an interview late last year.

Beyond that, Kane contends that she authorized only a very limited disclosure of information to the Daily News: a document related to a review she launched last March



**SPORTS:**



9 teams on Howard's trade list

**ENTERTAINMENT:**



Kevin Hart on Sony cyber-hack: 'It's not that serious to me'

**FOOD:**



End of line for Geechee Girl Rice Cafe

**JOBS:**



10 low-stress jobs that pay around $100K a year

*Stay Connected*

Get the latest Philly.com Daily Headlines newsletter delivered to your email. Sign up now!

Enter email address to sign up

Already a philly.com member? ○ Yes ○ No

examining how Fina dealt with the Mondesire allegations in 2009. Mondesire, who has denied any wrongdoing, was not charged in the inquiry, which ended years ago.

**Overzealous staff?**

Yet the article also quoted heavily from a 2009 internal memo detailing allegations against Mondesire. Kane maintains she has no idea how that particular document got to the newspaper. In effect, she is suggesting that perhaps overzealous members of her staff may have erred in putting together the information given to the newspaper.

Finally, Kane's allies are questioning the very legality of the investigation, saying no explicit statute permits such a leak investigation.

Castille has rejected this argument, citing among other things a state law that gives the high court the broad power to "cause right and justice to be done."

Nor are such leak inquiries unprecedented. The high court has authorized them at least twice before. In a 2007 case, the investigation led to the jailing of an investigator from the Attorney General's Office.

G. Terry Madonna, the political analyst, says any finding that Kane broke the law would be devastating to her image. Her post is closely tied to issues of character and integrity, Madonna said.

"You are innocent until proven guilty," he said. "But she is the state's top law enforcement officer. Any way you frame it, she is going to be in an extraordinarily tenuous position."

acouloumbis@phillynews.com 717-787-5934 @Angelastn

Angela Couloumbis and Craig R. McCoy
*Inquirer Staff Writers*

274 COMMENTS                                   Reprints & Permissions »

**Share this story with friends who would like it.**
We recommend which of your friends would enjoy this story.

**MORE FROM THE WEB**

Hillary Clinton: See this incredibly detailed map of where Americans would not vote her for President in 2016. *(SideWith)*

Surprising Titanic Mystery Solved with DNA Testing *(Ancestry)*

Former president granted a month's parole *(Nikkei Asian Review)*

Chinese fugitives still at large in US *(China Watch)*

Why This App is Quickly Replacing Human Financial Advisors *(Business Insider)*

Jailed and rich: Where does their cash go? *(Bankrate.com)*

**MORE FROM PHILLY.COM**

Reid suffers broken ribs, bones in accident

GOP legislators thwart bids to expand Medicaid

Sarah Palin photos of son stepping on dog trigger online outrage

Could be hack to pay for North Korea

Who would benefit if Clinton decides not to run?

Universities competing for Obama library site

## CERTIFICATE OF SERVICE

Pursuant to Pa.R.A.P. 121 and 122, the undersigned certifies that a true and correct copy of the foregoing document was served on the individual listed below on the date indicated by electronic transmission and first class United States mail.

Thomas E. Carluccio, Esq.
Special Prosecutor
1000 Madison Avenue
Norristown, PA 19403
E-mail: mailto:tomc3@comcast.net
Telephone: (484) 674-2899

January 6, 2014

*Christopher P Caputo*

Christopher P. Caputo, Esquire
Fetterhoff and Zilli
Caputo & Mariotti, P.C.
Moosic, PA 18507
Telephone: 570 342-9999
FAX: 570 457-1533
E-mail:cpcaputo@caputomariotti.com
PA Supreme Court ID 73446
*Attorney for David Peifer*

10

*1 MM2015*

Filed in Supreme Court

JAN 6 2014

Middle

UNSEALED PER
ORDER OF THE
COURT DATED
AUGUST 26, 2015

IN THE SUPREME COURT OF PENNSYLVANIA

IN RE:                              : SUPREME COURT No.
                                    :
                                    : GRAND JURY DOCKETS:
                                    :   SUPREME COURT OF PA
SPECIAL PROSECUTOR,                 :   No. 176 MD 2012
THIRTY-FIFTH STATEWIDE              :   MONTGOMERY CO. COURT
INVESTIGATING GRAND JURY            :   No. 2644 MD 2012

Petition of: D.P.

## EMERGENCY APPLICATION
## FOR
## LEAVE TO FILE ORIGINAL PROCESS

AND NOW, this 6th day of January, 2015, comes David Peifer, by counsel,

Christopher P. Caputo, Esq., and presents the following:

1. This Emergency Application For Leave To File Original Process is filed

pursuant to Pa.R.A.P. 3307.

2. The accompanying Emergency Application For Extraordinary Relief

invokes the jurisdiction of the Supreme Court under both 42 Pa.C.S.A. §721(3)

(original jurisdiction of the Supreme Court in *quo warranto*), and 42 Pa.C.S.A. §726

Received in Supreme Court

JAN 6 2015

Middle

(extraordinary or King's Bench jurisdiction).

3. In reference to the jurisdiction of the Supreme Court under 42 Pa.C.S.A. §721(3) only, leave to file the accompanying Emergency Application For Extraordinary Relief is requested on the ground that the Special Prosecutor in this matter was authorized by the Supreme Court, and such authorization would therefore not be subject to review by the Supervising Judge of the Grand Jury or any lesser court. While all documents filed to the grand jury dockets in this matter are under seal, it has been publicly reported that Supervising Judge of the Grand Jury William R. Carpenter issued the Order appointing the Special Prosecutor in this case, pursuant to a specific grant of authority by the Supreme Court to make such appointment.

4. The accompanying Emergency Application For Extraordinary Relief has also been filed pursuant to King's Bench jurisdiction under 42 Pa.C.S.A. §726, and is not subject to Pa.R.A.P. 3307.

WHEREFORE, it is requested that leave be granted under Pa.R.A.P. 3307 to include within the accompanying Emergency Application For Extraordinary Relief, a concurrent basis for relief under 42 Pa.C.S.A. §721(3).

Respectfully submitted,

Christopher P. Caputo, Esq.
Caputo & Mariotti, P.C.
730 Main Street
Moosic, PA 18507
Telephone: 570 342-9999
FAX: 570 457-1533
Email:cpcaputo@caputomariotti.com
PA Supreme Court ID 73446
*Attorney for David Peifer*

## CERTIFICATE OF SERVICE

Pursuant to Pa.R.A.P. 121 and 122, the undersigned certifies that a true and correct copy of the foregoing document was served on the individual listed below on the date indicated by electronic transmission and first class United States mail.

Thomas E. Carluccio, Esq.
Special Prosecutor
1000 Madison Avenue
Norristown, PA 19403
E-mail: mailto:tomc3@comcast.net
Telephone: (484) 674-2899

January 6, 2014

*Christopher P. Caputo*

Christopher P. Caputo, Esq.
Caputo & Mariotti, P.C.
730 Main Street
Moosic, PA 18507
Telephone: 570 342-9999
FAX: 570 457-1533
E-mail: cpcaputo@caputomariotti.com
PA Supreme Court ID 73446
*Attorney for David Peifer*

Filed in Supreme Court

JAN  6 2014

Middle

UNSEALED PER
ORDER OF THE
COURT DATED
AUGUST 26, 2015

IN THE SUPREME COURT OF PENNSYLVANIA

IN RE:                                           : SUPREME COURT No.
                                                 :
                                                 : GRAND JURY DOCKETS:
                                                 :    SUPREME COURT OF PA
SPECIAL PROSECUTOR,             :    No. 176 MD 2012
THIRTY-FIFTH STATEWIDE      :    MONTGOMERY CO. COURT
INVESTIGATING GRAND JURY   :    No. 2644 MD 2012

## EMERGENCY APPLICATION FOR STAY
## OF
## GRAND JURY PROCEEDINGS

AND NOW, this 6th day of January, 2015, comes David Peifer, by counsel,

Christopher P. Caputo, Esq., and presents the following:

1. This Emergency Application For Stay of Grand jury Proceedings is filed

pursuant to Pa.R.A.P. 3309(d) and Chapter 17.

2. The Applicant has been subpoenaed by the Special Prosecutor to appear

and testify before the Thirty-Fifth Statewide Investigating Grand Jury on

January 12, 2015.

Received in Supreme Court

JAN  6 2015

Middle

3. Orderly review by the Supreme Court of the companion Emergency Application For Leave To File Original Process and Emergency Application For Extraordinary Relief cannot occur prior to January 12, 2015.

4. The appointment of the Special Prosecutor in this matter was without any authority under Pennsylvania law, as set forth in the companion Emergency Application For Extraordinary Relief. The Applicant has accordingly presented a meritorious Application.

5. In the absence of a stay, the Applicant's opportunity to secure relief, or even consideration of any entitlement to relief, will be frustrated, and he will suffer the immediate and irreparable harm of being compelled to testify pursuant to subpoena issued by a Special Prosecutor appointed without lawful authority.

6. Determination by the Supreme Court of the legality of the office of Special Prosecutor and any legal authority for the appointment of the Special Prosecutor is a matter of immediate and substantial public interest.

WHEREFORE, it is requested that the Supreme Court issue a stay of the proceedings of the Thirty-Fifth Statewide Investigating Grand Jury as related to the matters being presented to that Grand Jury by the Special Prosecutor and described in the companion Emergency Application For Extraordinary Relief.

2

Respectfully submitted,

Christopher P. Caputo

Christopher P. Caputo, Esquire
Caputo & Mariotti, P.C.
730 Main Street
Moosic, PA 18507
Telephone: 570 342-9999
FAX: 570 457-1533
Email: cpcaputo@caputomariotti.com
PA Supreme Court ID 73446
*Attorney for David Peifer*

# CERTIFICATE OF SERVICE

Pursuant to Pa.R.A.P. 121 and 122, the undersigned certifies that a true and correct copy of the foregoing document was served on the individual listed below on the date indicated by electronic transmission and first class United States mail.

Thomas E. Carluccio, Esq.
Special Prosecutor
1000 Madison Avenue
Norristown, PA 19403
E-mail: mailto:tomc3@comcast.net
Telephone: (484) 674-2899

January 6, 2014

*Christopher P. Caputo*
Christopher P. Caputo, Esq.
Caputo & Mariotti, P.C.
730 Main Street
Moosic, PA 18507
Telephone: 570 342-9999
FAX: 570 457-1533
Email:cpcaputo@caputomariotti.com
PA Supreme Court ID 73446
*Attorney for David Peifer*

4

Filed in Supreme Court

JAN 9 2015

Middle

IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

UNSEALED PER
ORDER OF THE
COURT DATED
AUGUST 26, 2015

IN RE:

THE THIRTY-FIFTH STATEWIDE

INVESTIGATING GRAND JURY

: SUPREME COURT OF PENNSYLVANIA
: NO. 1 MM 2015
:
: MONTGOMERY COUNTY COMMON PLEAS
: M.D. 2644-2012
:

## SEALING ORDER

AND NOW, this 9th day of January, 2015, it is hereby ORDERED, that the attached Opinion of

January 9, 2015 be filed under seal with the Supreme Court of Pennsylvania until further Order of this

Court.

BY THE COURT:

WILLIAM R. CARPENTER,                    J.
Supervising Judge

Received in Supreme Court

JAN 9 2015

Middle

FILED UNDER SEAL

IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

| | | |
|---|---|---|
| IN RE: | : | |
| | : | SUPREME COURT DOCKET |
| THE THIRTY-FIFTH STATEWIDE | : | NO. 1 MM 2015 |
| INVESTIGATING GRAND JURY | : | |
| | : | MONTGOMERY COUNTY |
| | : | COMMON PLEAS |
| | : | NO. 2644-2012 |

## OPINION

CARPENTER  J.                                        JANUARY 9, 2015

### FACTUAL AND PROCEDURAL HISTORY

David Peifer, Special Agent in Charge, Bureau of Special Investigations, an employee of the Pennsylvania Office of the Attorney General ("OAG"), was subpoenaed to testify before the Thirty-Fifth Statewide Investigating Grand Jury on January 12, 2015. In response to this subpoena, on January 6, 2015, Special Agent Peifer filed the Emergency Application for Extraordinary Relief ("Emergency Application") currently before the Pennsylvania Supreme Court. Therein, he seeks to stay the Thirty-Fifth Statewide Investigating Grand Jury proceedings based upon his allegation that the appointment of the Special Prosecutor, Thomas E. Carluccio, by me, as the Supervising Judge of the Thirty-Fifth Statewide Investigating Grand Jury, was improper.

In his Emergency Application, Special Agent Peifer seeks to vacate the order appointing Special Prosecutor Carluccio, prohibit enforcement of all subpoenas issued by the Special Prosecutor and further prohibit issuance of any report or presentment by the Thirty-Fifth

Statewide Investigating Grand Jury. See, Motion for Extraordinary Relief 1/6/15, Wherefore clause, p. 9. Special Agent Peifer's Emergency Application should be denied based upon his lack of standing; and even if he does have standing, his Emergency Application should be denied because he has waived his opposition to the appointment of Special Prosecutor Carluccio. Finally, were the Pennsylvania Supreme Court reach the merits of his Emergency Application it lacks merit because a supervising judge of a statewide grand jury has the inherent authority to appoint a special prosecutor.

This Emergency Application was never served upon me. I had no knowledge of it until I was made aware of it by the Pennsylvania Supreme Court. Not only was the basic and common curtesy of properly serving this Emergency Application upon me ignored; but also, counsel never presented any aspect of this matter to me for adjudication. This matter should have come before me as a motion to quash a grand jury subpoena. Perhaps counsel was trying to make an end run around the possibility that such a motion would be denied, and would not be presently appealable as an order denying a motion to quash is considered interlocutory. In re Dauphin County Fourth Investigating Grand Jury, 596 Pa. 378, 943 A.2d 929 (Pa. 2007), the Pennsylvania Supreme Court discussed the interlocutory nature of an order denying a motion to quash, and the proper procedure for challenging such an order as follows:

> As a general rule, an order denying a motion to quash a subpoena is considered interlocutory and not subject to immediate appeal. One seeking to challenge the propriety of a grand jury subpoena must generally choose between complying with the subpoena and litigating the validity through contempt proceedings. Requiring the choice between compliance with the subpoena and the possibility of contempt preserves the interest in expeditious grand jury proceedings.
>
> [W]e have consistently held that the necessity for expedition in the administration of the criminal law justifies putting one who seeks to resist the production of desired information to a choice between compliance with a trial court's order to produce prior to any review of that order, and resistance to that order with the concomitant possibility of an adjudication of contempt if his claims are rejected on appeal. Further, the approach facilitates development of an

2

> adequate factual record in support of the reasons supporting
> resistance to the subpoena.

Id., 943 A.2d 929, 934 - 935 (Pa. 2007) (internal quotation marks and citations omitted). By filing this Emergency Application rather than a motion to quash, Special Agent Peifer is trying to bypass these concerns, and get directly in front of the Pennsylvania Supreme Court without following the proper procedure, and arguably without the proper standing.

By way of a brief background, on May 29, 2014, I, as Supervising Judge of the Thirty-Fifth Statewide Investigating Grand Jury, found that there were "reasonable grounds to believe a further more substantive investigation" into allegations that statewide Grand Jury secrecy may have been compromised was warranted, and on that date I appointed Special Prosecutor Carluccio. The May 29, 2014 Order followed an *in camera* proceeding which established that there was a leak of secret Grand Jury information and that the leak most likely came from the Office of the Attorney General. Accordingly, I determined that the appointment of a Special Prosecutor was necessary and appropriate.

Special Agent Peifer was served with a subpoena to appear and testify on January 12, 2015, before the Thirty-Fifth Statewide Grand Jury. On January 6, 2015, Special Agent Peifer filed the Emergency Application currently before the Pennsylvania Supreme Court.

## ISSUES

I.   Whether Special Agent Peifer lacks standing to bring this action.

II.  Whether Special Agent Peifer has waived an opposition to the appointment of Special Prosecutor Carluccio.

III. Whether the appointment of Special Prosecutor Carluccio was proper.

IV.  Whether an unjust result will occur if the requested relief is granted.

3

## DISCUSSION

I.    <u>Special Agent Peifer lacks standing to bring this action.</u>

Special Agent Peifer was subpoenaed to testify before the Thirty-Fifth Statewide Investigating Grand Jury, and claims that by virtue of this subpoena he has standing to challenge the legality of the office of Special Prosecutor, relying on <u>Gwinn v. Kane</u>, 339 A.2d 838 (Pa.Cmwlth. 1975).

Generally, a *quo warranto* action can only be instituted by the Attorney General or by the local district attorney. A private person will have standing to bring a *quo warranto* action only if that person has a special right or interest in the matter, as distinguished from the right or interest of the public generally, or if the private person has been specially damaged. *Spykerman v. Levy*, 491 Pa. 470, 485-86, 421 A.2d 641, 649 (1980).

In <u>Gwinn v. Kane</u>, the Pennsylvania Commonwealth Court concluded that a plaintiff, who had been indicted by a special prosecutor the Attorney General appointed to investigate bribery and corruption in the awarding of public contracts, had standing to bring a quo warranto action to challenge the appointment. The same concerns or "special right or interest" is not present in this case, where Special Agent Peifer has merely been called to testify as a witness before the Grand Jury.

If all subpoenaed witnesses who did not want to testify before the grand jury could file a *quo warranto* action with the Pennsylvania Supreme Court rather than a motion to quash with the Statewide Supervising Grand Jury Judge if he or she believed it would result in an unfavorable ruling, then all those similarly situated could make an end run around the process and procedure set forth by the Pennsylvania Supreme Court in <u>In re Dauphin County Fourth Investigating Grand Jury</u>, 596 Pa. 378, 943 A.2d 929 (Pa. 2007).

4

II.     Special Agent Peifer has waived an opposition to the appointment of Special Prosecutor Carluccio.

Even if Special Agent Peifer has standing to bring this action, then his challenge to Special Prosecutor Carluccio's appointment is waived. Special Agent Peifer was previously subpoenaed and honored that subpoena and appeared before the Thirty-Fifth Statewide Grand Jury on October 24, 2014 in response to a subpoena issued by Special Prosecutor Carluccio. An emergency simply does not exist, and his current challenge is waived.

III.    The appointment of Special Prosecutor Carluccio was proper.

My authority for the appointment of a special prosecutor was based upon the case of In re Dauphin County Fourth Investigating Grand Jury, 610 Pa. 296, 19 A.3d 491 (2014). This case dealt with the appointment of an special prosecutor in connection with alleged grand jury leaks, and the Court stated that, "[w]hen there are colorable allegations or indications that the sanctity of the grand jury process has been breached and those allegations warrant investigation, the appointment of a special prosecutor to conduct such an investigation is appropriate. And, even where the investigations of special prosecutors do not lead to prosecutable breaches of secrecy, they may provide insight into the often-competing values at stake, as well as guidance and context so that prosecutors and supervising judges conducting future proceedings may learn from the examples." Id. at 504.

The Court explained the vital role a supervising judge in regard to the grand jury process and emphasized the "[t]he very power of the grand jury, and the secrecy in which it operates, call for a strong judicial hand in supervising the proceedings" Id. at 503. The Court further explained as follows:

> We are cognizant that the substantial powers exercised by investigating grand juries, as well as the secrecy in which the proceedings are conducted, yield[ ] the potential for abuses. The safeguards against such abuses are reflected in the statutory scheme of regulation, which recognizes the essential role of the judiciary in supervising grand jury functions.

5

Id. at 503 – 504 (citing from In re Twenty-Fourth Statewide Investigating Grand Jury, 589 Pa. 89, 907 A.2d 505, 512 (2006).

> Thus, Pennsylvania's grand jury process is 'strictly regulated,' and the supervising judge has the singular role in maintaining the confidentiality of grand jury proceedings. The supervising judge has the continuing responsibility to oversee grand jury proceedings, a responsibility which includes insuring the solemn oath of secrecy is observed by all participants.

Id. at 504 (citations and internal quotation marks omitted).

The In re Dauphin County Court cited two cases that involved the appointment of a special prosecutor when there were allegations of grand jury leaks. The Court first cited to a Lackawanna Common Pleas Court case, In re County Investigating Grand Jury VIII (Lack. Com. Pl. 2005).

In that case there were allegations made, including, that e-mail communications had been exchanged between the Lackawanna District Attorney's Office and a newspaper reporter that divulged grand jury information, that a grand jury witness had been contacted by the reporter a short time after the witness appeared before the grand jury and was questioned about private matters that had been disclosed only to the grand jury. In re Dauphin County, 19 A.3d at 504. A preliminary review by the common pleas court judge verified only the existence of the emails that were exchanged between the reporter and a member of the District Attorney's office during the time the grand jury was conducting the relevant investigation. It was based upon this review that the common pleas court judge appointed a special prosecutor to investigate the allegations of a grand jury leak. Id.

The Pennsylvania Supreme Court in In re Dauphin County cited an additional example involving a special prosecutor in connection with alleged grand jury leaks and the complex interest and values implicated in an appointment of an special prosecutor. The Court cited to Castellani v. Scranton Times, 598 Pa. 283, 956 A.2d 937 (2008). In Castellani, the supervising judge appointed a special prosecutor to investigate allegations of grand jury leaks in

6

connection with a statewide investigating grand jury tasked with investigating allegations of abuse of the county prisoners by the prison guards. In re Dauphin County, 19 A.3d at 506.

Not only is there strong precedent that permits a supervising judge to appoint a special prosecutor when there are allegations of grand jury leaks; but also, at the time I appointed the Special Prosecutor on May 29, 2014, by way of a court order, which was delivered to Chief Justice Ronald D. Castille, I wrote a letter to Chief Justice Castille. In that letter, I explained what I had done and I ended the letter with the following language, "Please advise if you feel that I am in error or have exceeded my authority as the Supervising Grand Jury Judge." See, Exhibit "A", Letter dated May 29, 2014 to Chief Justice Castille. All of my letters to Chief Justice Castille have concluded with similar language. I have never been informed that I erred or exceeded my authority.

Additionally, Special Agent Peifer argues in his Emergency Motion that "[t]here was no necessity for the appointment of a special prosecutor in this matter, since, according to publicly known facts several county District Attorneys had jurisdiction to investigate any 'leak' by the OAG and prosecute any crime found to have been committed." See, Emergency Application for Extraordinary Relief 1/6/15 p. 8 ¶19. Special Agent Peifer is only correct to the extent that under the Grand Jury Act, Section 4551(d), 42 Pa.C.S.A, provides that "[i]n any case where a multicounty investigating grand jury returns a presentment the supervising judge shall select the county for conducting the trial from among those counties having jurisdiction." 42 Pa.C.S. § 4551(d). However, at the time of the appointment of Special Prosecutor Carluccio there was no clear indication which county might ultimately have jurisdiction to prosecute criminal charges. It wasn't even known whether an investigation into the leak would have resulted in criminal charges. It could have resulted in a finding of contempt. Asking a county District Attorney to use the resources of their office to investigate a matter for which they might never have jurisdiction is simply not appropriate.

7

The Supervising Judge of a Statewide Investigating Grand Jury must have the inherent authority to appoint a special prosecutor when appropriate. The Supervising Judge of a Statewide Investigating Grand Jury must have the inherent authority to use the resources of that Grand Jury to investigate breaches of grand jury secrecy. Without the inherent authority of the Supervising Judge to appoint a special prosecutor and use the resources of the grand jury, leaks of secret grand jury materials by members of the OAG would not be properly and timely addressed. Finally, without this authority the Supervising Judge would be severely hampered in carrying out the duties of the position.

## IV.    An unjust result will occur if the requested relief is granted.

Finally, if relief were to be granted, the result would be unjust. The maximum term of the Thirty-Fifth Statewide Investigating Grand Jury expires on January 16, 2015. Granting the requested relief would forever prevent the Thirty-Fifth Statewide Investigating Grand Jury from ever hearing the testimony of Special Agent Peifer. That would be unjust. This Grand Jury has heard the testimony of all of the other relevant witnesses in this matter. Asking Special Agent Peifer to tell the truth before the Thirty-Fifth Statewide Investigating Grand Jury is not prejudicial to him and does not merit Extraordinary Relief. Rather, it allows the Thirty-Fifth Statewide Investigating Grand Jury to finish its work regarding the allegation of the leak of secret Grand Jury information. A law enforcement officer such as a Special Agent should honor a subpoena and should tell the truth.

8

## CONCLUSION

I respectfully submit that this Emergency Application for Extraordinary Relief be

denied.

BY THE COURT:

**WILLIAM R. CARPENTER** J.
SUPERVISING JUDGE OF THE THIRTY-
FIFTH STATEWIDE INVESTIGATING
GRAND JURY

9

EXHIBIT "A"

PRESIDENT JUDGE
   WILLIAM J. FURBER, JR.
ASSOCIATE JUDGES
   JOSEPH A. SMYTH
   STANLEY R. OTT
   BERNARD A. MOORE
   WILLIAM R. CARPENTER
   RHONDA LEE DANIELE
   EMANUEL A. BERTIN
   THOMAS M. DELRICCI
   R. STEPHEN BARRETT
   THOMAS C. BRANCA
   STEVEN T. O'NEILL
   THOMAS P. ROGERS
   GARRETT D. PAGE
   KELLY C. WALL
   CAROLYN TORNETTA CARLUCCIO
   WENDY DEMCHICK-ALLOY
   PATRICIA E. COONAHAN
   LOIS EISNER MURPHY
   GARY S. SILOW
   RICHARD P. HAAZ
   CHERYL L. AUSTIN
   GAIL A. WEILHEIMER
   STEVEN C. TOLLIVER, SR.

SENIOR JUDGES
   WILLIAM T. NICHOLAS
   S. GERALD CORSO
   CALVIN S. DRAYER, JR.
   KENT H. ALBRIGHT
   ARTHUR R. TILSON

MONTGOMERY COUNTY
THIRTY-EIGHTH JUDICIAL DISTRICT
NORRISTOWN, PENNSYLVANIA
19404

May 29, 2014

The Honorable Ronald D. Castille
Chief Justice of Pennsylvania
Supreme Court of Pennsylvania
1818 Market Street, Suite 3730
Philadelphia, PA 19103

Re: Statewide Investigating Grand Juries

Dear Chief Justice:

Enclosed you will find an Order appointing a Special Prosecutor to investigate an allegation that secret Grand Jury information from a prior Grand Jury was released by someone in the Attorney General's Office.

As the current supervising Grand Jury Judge, this matter was brought to my attention. My preliminary review included in camera sealed testimony from two individuals with knowledge.

I have decided that the matter is important enough to appoint a Special Prosecutor, Thomas E. Carluccio, Esquire. He is a former prosecutor, served in the Department of the Attorney General in Delaware for fourteen years and a Special Assistant United States Attorney. In addition Tom has done Grand Jury work, and is honest, capable and reliable.

Please call me if you would like to discuss this matter further.

Please advise if you feel that I am in error or have exceeded my authority as the Supervising Grand Jury Judge.

Sincerely,

William R. Carpenter, J.
Supervising Judge

WRC/cns
Cc. Thomas E. Carluccio, Esquire

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

IN RE:

THE THIRTY-FIFTH STATEWIDE

INVESTIGATING GRAND JURY

: SUPREME COURT OF PENNSYLVANIA
: NO. 1 MM 2015
:
: MONTGOMERY COUNTY COMMON PLEAS
: M.D. 2644-2012
:

## CERTIFICATE OF SERVICE

I, William R. Carpenter, Supervising Judge of the 35th Statewide Investigating Grand Jury, certify that a true and correct copy of the attached Opinion of January 9, 2015 was forwarded to the persons set forth below via First Class Mail on January 9, 2015.

**WILLIAM R. CARPENTER,      J.**
Supervising Judge
Montgomery County Court of Common Pleas
P.O. Box 311
Norristown, PA 19404


Prothonotary Irene Bizzoso
Supreme Court of Pennsylvania
Pennsylvania Judicial Center
601 Commonwealth Avenue
Suite 4500
P.O. Box 62575
Harrisburg, PA 17106

Christopher P. Caputo, Esquire
730 Main Street
Moosic, PA 18507

Thomas E. Carluccio, Esquire
Special Prosecutor
1000 Germantown Pike
Suite D3
Plymouth Meeting, PA 19462

UNSEALED PER ORDER OF THE COURT DATED AUGUST 26, 2015

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

IN RE: SPECIAL PROSECUTOR,      : No. 1 MM 2015
THIRTY-FIFTH STATEWIDE          :
INVESTIGATING GRAND JURY      :
                                :
                                :
                                :

## <u>ORDER</u>

**PER CURIAM**

      **AND NOW**, this 9th day of January, 2015, to the extent the Application for Stay seeks to stay enforcement of the subpoena issued to Petitioner by the Thirty-Fifth Statewide Investigating Grand Jury, it is **GRANTED** pending disposition of the Application for Extraordinary Relief.

UNSEALED PER
ORDER OF THE
COURT DATED
AUGUST 26, 2015

Filed in Supreme Court

JAN 9 2015

Middle

FILED UNDER SEAL

# IN THE COURT OF COMMON PLEAS MONTGOMERY COUNTY, PA

IN RE:

THE THIRTY-FIFTH STATEWIDE
INVESTIGATING GRAND JURY

SUPREME COURT OF PENNSYLVANIA
NO. 1 MM 2015

MONTGOMERY COUNTY COMMON PLEAS
M.D. 2644-2012

## ANSWER OF SPECIAL PROSECUTOR
## TO THE EMERGENCY APPLICATION FOR EXTRAORDINARY RELIEF
### OF DAVID PEIFER

Thomas E. Carluccio, Special Prosecutor to the Investigatory Grand Jury hereby answers the *Emergency Application for Extraordinary Relief* filed by David Peifer, and states in support thereof as follows:

1. Admitted in part and Denied in part. It is admitted that the legal citations provided relate to the subject matter for which they assigned within this pleading. However, any assertion that such legal citations that together or separately dispositive to the underlying issues: (i) that the Supervising Judge of the Thirty-Fifth Statewide Investigating Grand Jury maintains the requisite legal authority to convene an investigation into allegations that statewide grand jury secrecy might have been compromised; (ii) that such legal authority was unconstitutional because it violated the separation of powers inherent in the Pennsylvania Constitution; and/or (iii) that the Supervising Judge did not maintain the requisite legal authority to appoint a Special Prosecutor — are all denied. To the contrary THE INVESTIGATING GRAND JURY ACT, and specifically 42 Pa.C.S. §4548(a) and § 4542 thereunder have both been appropriately met, as

Page: 1

Received in Supreme Court

JAN 9 2015

Middle

reflected in formal records and pleadings before this Honorable Court, and both the said Act and such documentation are conclusive to establishing that the Supervising Judge maintains legal authority to convene and oversee the subject Thirty-Fifth Statewide Investigating Grand Jury, and to appoint a Special Prosecutor thereto.

2. –21. (inclusive). Denied. The facts and events are denied as characterized by Peifer in the underlying Application. By way of further answer, David Peifer has voluntarily submitted himself to the jurisdiction of this Honorable Court through his physical attendance before the Grand Jury under subpoena on 10/24/14 prior to the filing of the underlying Application where such appearance was not occasioned by the communication of a reservation of rights challenging the authority of the Supervising Judge, nor the appointment of a Special Prosecutor – and as such has effectively waived the right to pursue an argument challenging the legal authority of the Supervising Judge to empanel and supervise a statewide investigating grand jury in this matter and appointing a Special Prosecutor thereto.

**WHEREFORE**, the *Emergency Application for Extraordinary Relief* filed by David Peifer should be denied, under law and for events which effectively render such arguments should be denied and/or deemed waived.

Thomas E. Carluccio, Esquire
Attorney I.D. No. # 81858
Plymouth Greene Office Campus
1000 Germantown Pike, Suite D-3
Plymouth Meeting, PA 19464-2484
(484) 674-2899
*Special Prosecutor of Investigating Grand Jury No. #35*

DATED: _____

Page: 2

# VERIFICATION

I, Thomas E. Carluccio, Esq. as Special Prosecutor to the Investigating Grand Jury No #35 appointed by the Pennsylvania Supreme Court, hereby state that after due diligence and investigation into the operative events underlying the subject matter of the *Emergency Application for Extraordinary Relief* filed of record with the Court by David Peifer, I hereby represent that the averments set forth in the foregoing Answer to the said Application are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S.A. §4904 relating to unsworn falsification to authorities.

Thomas E. Carluccio, Esquire
Attorney I.D. No. # 81858
Plymouth Greene Office Campus
1000 Germantown Pike, Suite D-3
Plymouth Meeting, PA 19464-2484
(484) 674-2899
*Special Prosecutor of Investigating Grand Jury No. #35*

UNSEALED PER
ORDER OF THE
COURT DATED
AUGUST 26, 2015

## IN THE COURT OF COMMON PLEAS MONTGOMERY COUNTY, PA

IN RE:

THE THIRTY-FIFTH STATEWIDE
INVESTIGATING GRAND JURY

SUPREME COURT OF PENNSYLVANIA
NO. 1 MM 2015

MONTGOMERY COUNTY COMMON PLEAS
M.D. 2644-2012

## ANSWER OF SPECIAL PROSECUTOR
## TO THE EMERGENCY APPLICATION
## FOR LEAVE TO FILE ORIGINAL PROCESS
### OF DAVID PEIFER

Thomas E. Carluccio, Special Prosecutor ("Respondent") to the Investigatory Grand Jury

hereby answers the *Emergency Application for Leave to File Original Process* filed by David

Peifer ("Applicant"), and states in support thereof as follows:

1. to 4. (inclusive) Admitted in part and Denied in part. It is admitted that the legal

citations provided relate to the subject matter for which they assigned within this pleading.

However, any assertion that such legal citations taken, together or separately, are dispositive to

the underlying rights and standing of the Applicant to file this pleading is denied.

**WHEREFORE**, the *Emergency Application for Leave to File Original Process* filed by

David Peifer should be denied.

Thomas E. Carluccio, Esquire
Attorney I.D. No. # 81858
Plymouth Greene Office Campus
1000 Germantown Pike, Suite D-3
Plymouth Meeting, PA 19464-2484
(484) 674-2899
*Special Prosecutor of Investigating Grand Jury No. #35*

DATED: 1/9/15

Page: 1

# VERIFICATION

I, Thomas E. Carluccio, Esq. as Special Prosecutor to the Investigating Grand Jury No #35 appointed by the Pennsylvania Supreme Court, hereby state that after due diligence and investigation into the operative events underlying the subject matter of the *Emergency Application for Leave to File Original Process* filed of record with the Court by David Peifer, I hereby represent that the averments set forth in the foregoing Answer to the said Application are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S.A. §4904 relating to unsworn falsification to authorities.

Thomas E. Carluccio, Esquire
Attorney I.D. No. # 81858
Plymouth Greene Office Campus
1000 Germantown Pike, Suite D-3
Plymouth Meeting, PA 19464-2484
(484) 674-2899
*Special Prosecutor of Investigating Grand Jury No. #35*

Filed in Supreme Court

UNSEALED PER
ORDER OF THE
COURT DATED
AUGUST 26, 2015

JAN 9 2015

Middle

FILED UNDER SEAL

# IN THE COURT OF COMMON PLEAS MONTGOMERY COUNTY, PA

| | |
|---|---|
| IN RE: | SUPREME COURT OF PENNSYLVANIA<br>NO. 1 MM 2015 |
| THE THIRTY-FIFTH STATEWIDE<br>INVESTIGATING GRAND JURY | MONTGOMERY COUNTY COMMON PLEAS<br>M.D. 2644-2012 |

## ANSWER OF SPECIAL PROSECUTOR
## TO THE EMERGENCY APPLICATION
## FOR STAY OF GRAND JURY PROCEEDINGS
### OF DAVID PEIFER

Thomas E. Carluccio, Special Prosecutor ("Respondent") to the Investigatory Grand Jury hereby answers the *Emergency Application for Stay of Grand Jury Proceedings* filed by David Peifer ("Applicant"), and states in support thereof as follows:

1. Admitted.

2. Admitted.

3. Denied. Respondent lacks sufficient knowledge or information to form a belief as to the truth of the allegations of this Paragraph, and therefore deny the same.

4. Denied. It is denied that the appointment of a Special Prosecutor in this matter was done without legal authority. To the contrary such appointment was made consistent with THE INVESTIGATING GRAND JURY ACT, and consistent with the plenary supervisory authority afforded under law and granted to the subject Supervising Judge, as occurred here, who undertook the appointment of the Special Prosecutor in the underlying matter. As such, it is denied the

Page: 1

Received in Supreme Court

JAN 9 2015

Middle

Applicant has presented a meritorious Application.

5. Denied. Respondent lacks sufficient knowledge or information to form a belief as to the truth of the allegations of this Paragraph, and therefore deny the same. By way of further answer, the Respondent is not aware of any injury or damage that would be caused Applicant in testifying before the Thirty-Fifth Investigating Grand Jury under the subpoenas issued him.

6. Denied. It is denied the this Honorable Court's determination on the legality of the appointment the Special Prosecutor is a matter of immediate concern and of substantial public interest. To the contrary the appointment of the Special Prosecutor should not be at issue warranting immediate review.

**WHEREFORE**, the *Emergency Application for Stay of Grand Jury Proceedings* filed by David Peifer should be denied.

Thomas E. Carluccio, Esquire
Attorney I.D. No. # 81858
Plymouth Greene Office Campus
1000 Germantown Pike, Suite D-3
Plymouth Meeting, PA 19464-2484
(484) 674-2899
*Special Prosecutor of Investigating Grand Jury No. #35*

DATED: 1/7/15

# VERIFICATION

I, Thomas E. Carluccio, Esq. as Special Prosecutor to the Investigating Grand Jury No #35 appointed by the Pennsylvania Supreme Court, hereby state that after due diligence and investigation into the operative events underlying the subject matter of the *Emergency Application for Stay of Grand Jury Proceedings* filed of record with the Court by David Peifer, I hereby represent that the averments set forth in the foregoing Answer to the said Application are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S.A. §4904 relating to unsworn falsification to authorities.

Thomas E. Carluccio, Esquire
Attorney I.D. No. # 81858
Plymouth Greene Office Campus
1000 Germantown Pike, Suite D-3
Plymouth Meeting, PA 19464-2484
(484) 674-2899
*Special Prosecutor of Investigating Grand Jury No. #35*

UNSEALED PER
ORDER OF THE
COURT DATED
AUGUST 26, 2015

Filed in Supreme Court

JAN 9 2015

Middle

FILED UNDER SEAL

## IN THE COURT OF COMMON PLEAS MONTGOMERY COUNTY, PA

IN RE:

THE THIRTY-FIFTH STATEWIDE
INVESTIGATING GRAND JURY

:
:
:
:
:
:
:
:

SUPREME COURT OF PENNSYLVANIA
NO. 1 MM 2015

MONTGOMERY COUNTY COMMON PLEAS
M.D. 2644-2012

### MEMORANDUM OF LAW IN SUPPORT OF
### ANSWERS OF SPECIAL PROSECUTOR TO THE
### FOLLOWING FILINGS OF RECORD OF DAVID PEIFER:

1. THE EMERGENCY APPLICATION FOR EXTRAORDINARY RELIEF
2. THE EMERGENCY APPLICATION FOR STAY OF GRAND JURY PROCEEDINGS
3. THE EMERGENCY APPLICATION FOR LEAVE TO FILE ORIGINAL PROCESS

Thomas E. Carluccio, Special Prosecutor to the Investigatory Grand Jury hereby submits this Memorandum of Law in support of his answers to three (3) pleadings of filed by David Peifer, being: (i) the Emergency Application for Extraordinary Relief; (ii) the Emergency Application for Stay of Grand Jury Proceedings; and (iii) the Emergency Application for Leave to File Original Process (collectively hereinafter sometimes referenced, the "Claims").

### I. BACKGROUND

In response to a subpoena, David Peifer initially testified before the Thirty-Fifth Investigating Grand Jury on 10/24/14, with no communicated reservations of rights. Notwithstanding his prior conduct in testifying, Peifer has filed of record the three (3) aforementioned pleadings, all of which are designed to avoid his further testimony under

Received in Supreme Court

JAN 9 2015

Middle

subpoena scheduled on 1/12/15. In seeking to avoid testifying Peifer has adopted a tact of challenging the subpoena requiring his 1/12/15 testimony, the legal authority of the Supervising Judge of the Thirty-Fifth Statewide Investigating Grand Jury to empanel and supervise the Thirty-Fifth Investigating Grand Jury, to appoint a Special Prosecutor thereto, and to seek this Honorable Court's immediate review.

Supervising Judge, William R. Carpenter, has issued his Opinion of record with this Court on 1/9/15.

Thomas E. Carluccio, Esq., as appointed Special Prosecutor has timely filed his Answers to the three Applications, and presents this Legal Memorandum in support thereof.

## II. ARGUMENT

### A. Peifer lacks standing to bring a Quo Warranto Action as expressed or implied in his Claims.

In the interest of judicial economy, the Special Prosecutor adopts in full the discussion and legal analysis set forth in Supervising Judge Carpenter's Opinion as dispositive on the issues raised by Peifer in his Claims.

The case law cited by Supervising Judge Carpenter is acknowledged to be prevailing law, and provides that an individual does not possess proper standing to undertake a Quo Warranto Action unless they distinguish themselves to maintain a special right or interest from that of the general public. Here, Peifer fails to distinguish himself as required. His only "damage" or special interest" is an interest to avoid testifying before an investigating grand jury, where to do so has not been shown to be overzealously sought by the Special Prosecutor nor would result in damage to Peifer.

Accordingly, is clear that Peifer has a lack of standing to pursue a Quo Warranto Action in this

matter.

**B.** <u>Peifer has effectively waived an opposition to the appointment of the Special Prosecutor.</u>

As stated, Peifer has already voluntarily submitted himself to the jurisdiction of this Honorable Court and waived any claim to challenge the authority of the Special Prosecutor (and specifically relating to the authority to issue a subpoena) by virtue of Peifer's voluntary, and without reservation, appearance and testimony before the Thirty-Fifth Investigating Grand Jury.

The authority of a Special Prosecutor to utilize the power of a subpoena on behalf of an investigating grand jury is clear. 42 Pa.C.S. §4542 provides authority to the Special Prosecutor to compel the attendance of investigating witnesses, and provides in relevant part as follows:

**§4542  Investigative resources of the grand jury**

**"The power to compel the attendance of investigating witnesses; the power to compel the testimony of investigating witnesses under oath; the power to take investigating testimony from witnesses who have been granted immunity; the power to require the production of documents, records and other evidence;. . ."**

In addressing the authority to subpoena a witness, Judge Savitt adroitly opined in his seminal publication, <u>Pennsylvania Grand Jury Practice</u>, quoted in *IN RE: Special Investigating Grand Jury of April 26, 1984*, 37 PA. D &C 3d 516) 1986 at page 520:

**"It can be seen from a reading of these excerpts from the act that broad subpoena power is vested in the investigating authority. The rationale is apparent. Without such authority, how could a prosecutor effectively investigate and ferret out crime? To follow the narrow construction that appellants desire would have a chilling effect on any and all types of investigation. It would defeat the very purpose of the act."  Judge Savitt, Pennsylvania Grand Jury Practice, §21.04(A)(3) at p. 92-93, §21.04(C)(3) at p. 96 (1983).**

In conclusion, it is irrefutable that under the facts and events associated with the Special Prosecutor's issuance service of a subpoena in this matter, Peifer testimony before the Thirty-Fifth Investigating Grand Jury is to be appropriately compelled.

## C. The appointment of Special Prosecutor Carluccio was proper.

In short, both statutory and case law, including without limitation 42 §4544 of THE INVESTIGATING GRAND JURY ACT are clear that upon Order of the Pennsylvania Supreme Court to empanel a multicounty investigating grand jury, the designated Supervising Judge has the legal authority and plenary supervising authority to appoint a Special Prosecutor. All requirements under 42§4544, including without limitation the Application of the Attorney General for an Order to convene a multicounty investigating grand jury, an Order of the Supreme Court to such effect, designation of a Supervising Judge, and his/her appointment of a Special Prosecutor are all appropriately and lawfully found in the underlying matter.

Further, there is sufficient legal precedent for a Supervising Judge to appoint a special prosecutor and/or oversee grand jury proceedings. See *In re Dauphin County Fourth Investigating Grand Jury*, 610 Pa. 296, 19 A.3d 491 (2014); *In Re Twenty-Fourth Statewide Investigating Grand Jury*, 907 A.2d 505 (Pa. 2006); *In re June 1979 Allegheny County Investigating Grand Jury*, 415 A.2d 73, 78 (Pa. 1980). *Castellani v. The Scranton Times*, 956 A.2d 937 (PA. 2008).

Again, Supervising Judge Carpenter's legal analysis, in addition to the above, is adopted here as though more fully set forth herein.

In view of the foregoing, there was no improprieties in both the authority of Supervising Judge Carpenter, and in his subsequent appointment of Special Prosecutor Carluccio which warrant a review of the concern, and to quash the subpoena served upon Peifer. As such, his testimony should proceed without further incident.

**D. There is no unjust result to Peifer should his Claims be denied.**

As stated in the answers to the Claims of Special Prosecutor Carluccio, the only real issue confronting Peifer is a subpoena for his appearance to testify before the Thirty-Fifth Investigating Grand Jury. Contrary to his assertions, there are no immediate concerns nor substantial public interests that compel an emergency review of the appointment of the Special Prosecutor, nor into the subpoena itself. Further, as stated, Peifer has articulated no damages to him personally in honoring the subpoena and offering testimony. As such, his testimony should proceed without further incident.

## III. CONCLUSION

For the foregoing reasons, and under both the statutory and case law authority referenced in Supervising Judge Carpenter's Opinion dated 1/9/2015, together with that offered herein, and due to Peifer's prior submission to the jurisdiction of this Honorable Court and acceptance of the authority of the Special Prosecutor by virtue of a prior appearance before the same Thirty-Fifth Investigating Grand Jury under a similar subpoenas as that addressed in the Claims — accordingly the Application should be denied and/or deemed waived.

Thomas E. Carluccio, Esquire
Attorney I.D. No. # 81858
Plymouth Greene Office Campus
1000 Germantown Pike, Suite D-3
Plymouth Meeting, PA 19464-2484
(484) 674-2899
*Special Prosecutor of Investigating Grand Jury No. #35*

DATED: 1/9/15

# IN THE COURT OF COMMON PLEAS MONTGOMERY COUNTY, PA

IN RE:

THE THIRTY-FIFTH STATEWIDE
INVESTIGATING GRAND JURY

:
:
:
:
:
:
:
:
:.
:

SUPREME COURT OF PENNSYLVANIA
NO. 1 MM 2015


MONTGOMERY COUNTY COMMON PLEAS
M.D. 2644-2012

---

# CERTIFICATE OF SERVICE

I, Thomas E. Carluccio, Esquire do hereby certify that a true and correct copy of the following:

1.  Answer of Special Prosecutor to Emergency Application for Extraordinary Relief;

2.  Answer of Special Prosecutor to the Emergency Application for Stay of Grand Jury Proceedings;

3.  Answer of Special Prosecutor to the Emergency Application for Leave to File Original Process; and

4.  Memorandum of Law in Support of the Answers of the Special Prosecutor to the aforementioned pleadings

all in response to the previous filings of David Peifer has been filed of record with the Pennsylvania Supreme Court on

the 9th day of January, 2015, and copies of the filed pleadings have been directed on the 9th day of January, 2015 by

first class U.S. Mail, postage prepaid, to all parties in interest, as follows:

Christopher P. Caputo, Esq.
730 Main Street
Moosic, PA 18507

The Hon. William R. Carpenter
Court of Common Pleas of Montgomery County
P.O. Box 311
Norristown, PA 19404-0311


Thomas E. Carluccio, Esquire
Attorney I.D. No. # 81858
Plymouth Greene Office Campus
1000 Germantown Pike, Suite D-3
Plymouth Meeting, PA 19464-2484
(484) 674-2899
*Special Prosecutor of Investigating Grand Jury No. #35*

FILED
1/13/2015
Supreme Court
Middle District

**IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT**

UNSEALED PER
ORDER OF THE
COURT DATED
AUGUST 26, 2015

IN RE: SPECIAL PROSECUTOR,
THIRTY-FIFTH STATEWIDE
INVESTIGATING GRAND JURY

: No. 1 MM 2015

## APPLICATION FOR LEAVE TO FILE RESPONSE

**AND NOW,** this 13th day of January, 2015, comes David Peifer, by counsel, Christopher P. Caputo, Esquire, and presents the following:

1. The Honorable Judge Carpenter, and Specially Appointed Prosecutor Thomas Carluccio have filed Memorandum and Opinion respectively supplementing the Special Prosecutor's Answer to David Peifer's claim for *quo warranto*, the Opinion and Memorandum raise a New Matter regarding whether Judge Carpenter proceeded under the authority and Order of the Supreme Court, as the Order Appointing Special Prosecutor predated any contact with the Supreme Court on the matter, and the Supreme Court provided no Authority and or Order prior to the Appointment of the Special Prosecutor Mr. Carluccio. (See Exhibit "A" – letter of Honorable Judge Carpenter to Supreme Court).

2. The Honorable Court's Opinion and the Special Prosecutor's Memorandum aver and allege that the authority to appoint a Special Prosecutor is found in 42 Pa. C.S.A. 4544, the Grand Jury Act, as well as *in re: Dauphin County Fourth Investigative Grand Jury*, 19 A.3d 491 (2014). 42 Pa. C.S.A. 4544 speaks specifically to empaneling and applying for the empanelment of the

RECEIVED
1/13/2015
Supreme Court
Middle District

Grand Jury, it offers no guidance, and it is silent as to the appointment of a Special Prosecutor. *In re: Dauphin County Fourth Investigative Grand* Jury, likewise offers no guidance relative to the statutory authority, or authority of a sitting Judge to appoint a special prosecutor, such act superseding the authority of the District Attorney of the County in which the criminal act was alleged to have occurred.

3. David Peifer has standing to bring his claim for relief under *quo warranto*, as he has sustained specific and real damages pursuant to the Special Prosecutor's threat, intimidation, and accusations that he committed perjury, and was the leak of grand jury information to the public.

4. This matter is of significant importance to the public as it involves constitutional concepts as to the rights of the public, the authority of the court, and the issues of separation of powers and checks and balances. In the absence of allowing review of David Peifer's response this Honorable Court will not have the opportunity to review facts which would be significant in assisting them in coming to a just conclusion of the matter.

**WHEREFORE**, based on the above it is requested that the Supreme Court grant this Leave to file a response and consider same in determining the outcome of David Peifer's claim for *quo warranto*.

SEALED

Respectfully submitted,

**CAPUTO & MARIOTTI, P.C.**

*Christopher P. Caputo*
Christopher P. Caputo, Esquire
Atty. ID 73446
730 Main Street
Moosic, PA 18507
(570) 342-9999

# EXHIBIT A

PRESIDENT JUDGE
WILLIAM J. FURBER, JR.
ASSOCIATE JUDGES
JOSEPH A. SMYTH
STANLEY R. OTT
BERNARD A. MOORE
WILLIAM R. CARPENTER
RHONDA LEE DANIELE
EMANUEL A. BERTIN
THOMAS M. DELRICCI
R. STEPHEN BARRETT
THOMAS C. BRANCA
STEVEN T. O'NEILL
THOMAS P. ROGERS
GARRETT D. PAGE
KELLY C. WALL
CAROLYN TORNETTA CARLUCCIO
WENDY DEMCHICK-ALLOY
PATRICIA E. COONAHAN
LOIS EISNER MURPHY
GARY S. SILOW
RICHARD P. HAAZ
CHERYL L. AUSTIN
GAIL A. WEILHEIMER
STEVEN C. TOLLIVER, SR.

SENIOR JUDGES
WILLIAM T. NICHOLAS
S. GERALD CORSO
CALVIN S. DRAYER, JR.
KENT H. ALBRIGHT
ARTHUR R. TILSON

## COURT OF COMMON PLEAS



**MONTGOMERY COUNTY**
THIRTY-EIGHTH JUDICIAL DISTRICT
**NORRISTOWN, PENNSYLVANIA**
**19404**

May 29, 2014

The Honorable Ronald D. Castille
Chief Justice of Pennsylvania
Supreme Court of Pennsylvania
1818 Market Street, Suite 3730
Philadelphia, PA 19103

Re: Statewide Investigating Grand Juries

Dear Chief Justice:

Enclosed you will find an Order appointing a Special Prosecutor to investigate an allegation that secret Grand Jury information from a prior Grand Jury was released by someone in the Attorney General's Office.

As the current supervising Grand Jury Judge, this matter was brought to my attention. My preliminary review included in camera sealed testimony from two individuals with knowledge.

I have decided that the matter is important enough to appoint a Special Prosecutor, Thomas E. Carluccio, Esquire. He is a former prosecutor, served in the Department of the Attorney General in Delaware for fourteen years and a Special Assistant United States Attorney. In addition Tom has done Grand Jury work, and is honest, capable and reliable.

Please call me if you would like to discuss this matter further.

Please advise if you feel that I am in error or have exceeded my authority as the Supervising Grand Jury Judge.

Sincerely,

William R. Carpenter, J.
Supervising Judge

WRC/cns
Cc. Thomas E. Carluccio, Esquire

SEALED

## CERTIFICATE OF SERVICE

Pursuant to Pa.R.App.P.121 and 122 the undersigned certifies that a true and correct copy of the foregoing document was served upon the individual listed below on the date indicated by electronic transmission and fist class United States Mail:

Thomas E. Carluccio, Esq.
Special Prosecutor
1000 Germantown Pike, Suite D3
Plymouth Meeting, PA 19462
E-mail: mailto:tomc3@comcast.net

Honorable William R. Carpenter
Montgomery County Courthouse
2 East Airy Street
P.O. Box 311
Norristown, PA 19404-0311
E-mail: *cserafin@montcopa.org*

**CAPUTO & MARIOTTI, P.C.**

Date: January 13, 2015

Christopher P. Caputo, Esquire
Atty. ID 73446
730 Main Street
Moosic, PA 18507
(570) 342-9999

## IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

IN RE: SPECIAL PROSECUTOR,      : No. 1 MM 2015
THIRTY-FIFTH STATEWIDE          :
INVESTIGATING GRAND JURY        : :
                                : :
                                : :
                                : :
                                : :

## RESPONSE BY DAVID PEIFER TO MEMORANDUM OF LAW OF SPECIAL PROSECUTOR THOMAS CARLUCCIO AND OPINION OF THE HONORABLE JUDGE CARPENTER

**Facts and History:**

David Peifer Special Agent in Charge of the Office of Attorney General by and through counsel, responds to the facts and claims made in the Memorandum of Law filed by the Special Prosecutor Thomas Carluccio and the Opinion filed by the Honorable Court, Judge Carpenter, answering David Peifer's claim for *quo warranto* relief.

## SUPERVISING JUDGE AUTHORITY

The facts of the instant matter are that some time prior to or on May 29, 2014 the Honorable Judge Carpenter was apprised that a leak from a prior grand jury occurred. In response thereto, he appointed a Special Prosecutor, Thomas Carluccio, to investigate and prosecute the matter; ultimately determined to be a leak from a 2009 grand jury presided over by Judge Riccardo Jackson, not Judge Carpenter. Judge Carpenter was not the Supervising Judge of the Grand Jury from which the leak was alleged to have occurred five years later. The authority cited by the Court and Special Prosecutor speak only to the supervising Judge of the Grand Jury instituting and

conducting and having the authority to appoint a Special Prosecutor to investigate a leak from the Grand Jury over which that Supervising Judge presides. Additionally none of the cases cited by Judge Carpenter, or Mr. Carluccio makes statutory reference, or any reference to a Rule, or a section of any of the codes in Pennsylvania which provide authority for the appointment of a Special Prosecutor under circumstances as found in the instant action.

The Honorable Court cited *In Re: Dauphin County Fourth Investigating Grand Jury*, 610 Pa. 296, 19 A.3d 491 (2014) and the Special Prosecutor cited *In Re: Twenty-Fourth Investigating Grand Jury*, 907 A.2d 505 (Pa. 2006) *In re: June 1979 Allegheny County Investigating Grand Jury*, 415 A.2d 73, 78 (Pa. 1980) and *Castellani v. Scranton Times, L.P.*, 956 A.2d 937 (Pa. 2008). While each of the cases cited involve an instance where the presiding judge of a grand jury from which the leak was alleged to have occurred appointed a Special Prosecutor to investigate the leak, none of the cases references any statutory authority for the appointment whatsoever. Additionally, in each one of those cases, it was the presiding judge of the grand jury for which a leak was alleged to have occurred that appointed the Special Prosecutor to investigate only, not prosecute, the circumstances surrounding the alleged leak.

The cited cases provide no guidance to the Court regarding the appointment by a Common Pleas Judge of a Special Prosecutor to investigate the alleged leak of the grand jury which occurred under the supervision of a separate and different Judge. Additionally none of the Orders Appointing the Special Prosecutors in those cases provided for the overly broad, and specific powers to a Special Prosecutor to investigate and prosecute any criminal acts that he sees fit. In the absence of a specific statute

providing the Honorable Court with the authority to appoint a Prosecutor with wide ranging powers as was completed here by Judge Carpenter, this appointment is null and void.

42 Pa. C.S.A. § 4544 has been cited as the authority under which Judge Carpenter appointed Mr. Carluccio. This section of the Grand Jury Act speaks only to the empaneling of a grand jury, and is silent regarding the authority to appoint a special prosecutor therefore the reliance on 42 Pa. C.S.A. 4544 is misplaced. David Peifer specifically challenges the Appointment of a Special Prosecutor, not how the Grand Jury was empanelled.

Mr. Carluccio's special appointment predated any Order or authority provided by the Supreme Court to Judge Carpenter on this matter, as is established by Judge Carpenter's May 29, 2014 letter to Justice Castille, as that letter categorically establishes that Judge Carpenter simply Ordered the Appointment, and made Justice Castille aware of it, and no other procedures were followed prior to ordering the Special Prosecutor's Appointment to assurance that the authority of an elected District Attorney of any appropriate County was not superseded by the appointment.

Based on the facts, the appointment as it occurred supersedes the authority of the sitting District Attorney a point bolstered by the fact that if the newspapers are to be believed, Mr. Carluccio has provided his presentment, and criminal charges to be prosecuted by the District Attorney of Montgomery County. Mr. Carluccio, again if the papers are to be believed, has sent this matter to the District Attorney of Montgomery County to prosecute, even though the appointment by Judge Carpenter provides him with the complete power to prosecute the matter on his own. Clearly he has determined

that for him to prosecute and pursue this matter any further would supersede the authority of the sitting District Attorney in Montgomery County.

In conclusion relative to the authority of the supervising Judge of the Thirty-Fifth Statewide Investigating Grand Jury to appoint Mr. Carluccio, there is no statutory authority cited by either the Court, or the Special Prosecutor, and the case law referenced by the Judge and the Special Prosecutor does not outline a set of circumstances, or a legal premise upon which the appointment which occurred in this instance is appropriate.

**STANDING**

While the prosecutor and Honorable Court claim the *quo warranto* is but a veiled motion to quash a subpoena, the facts belie this assessment, and concurrently establish harm to David Peifer, and therefore establish standing on his behalf. David Peifer on three separate occasions was served with subpoena and appeared before the grand jury on three separate occasions without filing motions to quash the subpoenas with the Honorable Court. (See Exhibit B, C, and D – grand jury subpoenas issued July 2014; September 2014; December 2014).

In fact Peifer testified twice before the grand jury under oath and on the record in July 2014 and in October 2014. The Special Prosecutor issued a third subpoena upon Peifer, and Peifer appeared, on December 19, 2014 in Norristown, at which time the Special Prosecutor denied him access to the grand jury. Also on that same day the Special Prosecutor threatened Peifer accusing him of perjury, and being the grand jury leak. Only after this intimidation, and threat, was it apparent that Carluccio's authority to charge David Peifer and prosecute Peifer, a thirty-seven year law enforcement veteran,

was detrimental to Peifer and causes Peifer specific harm. Based on the threats levied at Peifer by Carluccio on December 19, 2014, and the authority granted Carluccio by the Judge's Order Appointing him Special Prosecutor, Peifer has standing and has alleged specific and particular damages and harm.

**Conclusion**

The Honorable Court should find the appointment of Mr. Carluccio null and void and grant the relief requested in the claim for quo warranto..

Respectfully submitted,

**CAPUTO & MARIOTTI, P.C.**

Christopher P. Caputo, Esquire
Atty. ID 73446
730 Main Street
Moosic, PA 18507
(570) 342-9999

# EXHIBIT B

# Commonwealth of Pennsylvania

## STATEWIDE INVESTIGATING GRAND JURY

## —————— SUBPOENA ——————

TO: DAVID PEIFER

:SUPREME COURT OF PENNSYLVANIA
:NO. 176 M.D. MISC. DKT. 2012
:MONTGOMERY COUNTY COMMON PLEAS
:M.D. 2644-2012

1. YOU are ORDERED to appear as a witness before the PENNSYLVANIA STATEWIDE INVESTIGATING GRAND JURY, 1000 Madison Avenue (corner of Trooper and Van Buren Roads), Third Floor, Norristown, Pennsylvania, on Tuesday, July 29, 2014, at 8:00 O'clock A.M. to testify and give evidence regarding alleged violations of the laws of the Commonwealth of Pennsylvania and to remain until excused.

2. YOU are further ORDERED:

FAILURE to attend may cause a warrant to be issued for your arrest and will make you liable under penalty of law for contempt of Court.

DATED: July 18, 2014

*William R. Carpenter*

---

**Hon. William R. Carpenter**
*Supervising Judge*

If you have any questions about your appearance, contact Deputy Attorney General Thomas Carluccio, at 484.674.2899.

Notice: 123          Subpoena: 1163

# EXHIBIT C

# Commonwealth of Pennsylvania

## STATEWIDE INVESTIGATING GRAND JURY
### ————— SUBPOENA —————

TO:  DAVID PEIFER

:SUPREME COURT OF PENNSYLVANIA
:NO. 176 M.D. MISC. DKT. 2012
:MONTGOMERY COUNTY COMMON PLEAS
:M.D. 2644-2012

1.    YOU are ORDERED to appear as a witness before the PENNSYLVANIA STATEWIDE INVESTIGATING GRAND JURY, 1000 Madison Avenue (corner of Trooper and Van Buren Roads), Third Floor, Norristown, Pennsylvania, on Monday, September 15, 2014, at 8:00 O'clock A.M. to testify and give evidence regarding alleged violations of the laws of the Commonwealth of Pennsylvania and to remain until excused.

2.    YOU are further ORDERED:

FAILURE to attend may cause a warrant to be issued for your arrest and will make you liable under penalty of law for contempt of Court.

DATED: September 8, 2014

*William R. Carpenter*

Hon. William R. Carpenter
*Supervising Judge*

If you have any questions about your appearance, contact Deputy Attorney General Thomas Carluccio, at 484.674.2899.

Subpoena: 1374

# EXHIBIT D

# Commonwealth of Pennsylvania

## STATEWIDE INVESTIGATING GRAND JURY
## ──── SUBPOENA ────

TO: David C. Peifer

:SUPREME COURT OF PENNSYLVANIA
:NO. 176 M.D. MISC. DKT. 2012
:MONTGOMERY COUNTY COMMON PLEAS
:M.D. 2644-2012

1.    YOU are ORDERED to appear as a witness before the PENNSYLVANIA STATEWIDE INVESTIGATING GRAND JURY, 1000 Madison Avenue (corner of Trooper and Van Buren Roads), Third Floor, Norristown, Pennsylvania, on Monday, January 12, 2015 through Friday, January 16, 2015, at 8:00 O'clock A.M. to testify and give evidence regarding alleged violations of the laws of the Commonwealth of Pennsylvania and to remain until excused.

Please report on Monday, January 12, 2015 at 1:00 PM

2.    YOU are further ORDERED:

FAILURE to attend may cause a warrant to be issued for your arrest and will make you liable under penalty of law for contempt of Court.

DATED: December 3, 2014

*William R. Carpenter*

_____

Hon. William R. Carpenter
*Supervising Judge*

If you have any questions about your appearance, contact Special Prosecutor Thomas Carluccio, at 484.674.2899.

Notice:   123                    Subpoena: 1624

**SEALED**

**UNSEALED PER ORDER OF THE COURT DATED AUGUST 26, 2015**

**IN THE SUPREME COURT OF PENNSYLVANIA MIDDLE DISTRICT**

IN RE: SPECIAL PROSECUTOR,     : No. 1 MM 2015
THIRTY-FIFTH STATEWIDE          :
INVESTIGATING GRAND JURY      :
                                :
                                :
                                :

## ORDER

**PER CURIAM**

     **AND NOW**, this 24th day of April, 2015, the Application for Leave to File Original Process is **GRANTED**, and the Application for Extraordinary Relief is **DENIED**. *See In re Thirty-Fifth Statewide Investigating Grand Jury*, \_\_\_ A.3d \_\_\_, 2015 WL 1441830 (Pa. 2015). It is further ordered that the Application for Leave to File a Response is **DISMISSED AS MOOT**, and the stay entered on January 9, 2015, is **DISSOLVED**.